Arturo OLIVARES, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–89–00168–CR.

Court of Appeals of Texas,
El Paso.

March 7, 1990.

David C. Guaderrama, El Paso County Public Defender, El Paso, for appellant.

Steve W. Simmons, Dist. Atty. of El Paso County, El Paso, for appellee.

Before OSBORN, C.J., and FULLER and KOEHLER, JJ.

## OPINION

KOEHLER, Justice.

This is an appeal from a jury conviction for aggravated robbery. The jury assessed punishment at imprisonment for five years. We affirm.

Appellant was jointly tried with co-defendant Fernando Giron for the aggravated robbery of a gas station attendant, Jorge Mesa, in El Paso on the afternoon of March 18, 1988. A third co-defendant, Thomas Gonzalez Silva, was tried separately. The State's evidence reflected that Appellant and Giron entered the station at approximately 2:30 p.m. Giron exhibited a shotgun partially concealed by his jacket. Appellant went behind the desk and took the money in the cash box, as well as additional cash from the attendant, Mesa. Co-defendant Silva remained in the vehicle (owned by Appellant's wife) and served as driver. All three were wearing sunglasses. As the trio drove away, eastbound on Alameda Avenue, Mesa went outside to see their vehicle. He then called the police, reporting the robbery, the use of the sawed-off shotgun, the description of the vehicle (brown sedan with temporary paper license in rear window), and their direction of flight. Officers Samuel Reyes and Mario Contreras were on routine patrol at 3:04 p.m. when they were dispatched to respond to the robbery report. They received the above description over the radio. They were westbound on Alameda when they observed a vehicle matching the description given by Mesa coming towards them. As they passed, the officers noticed that all three occupants turned and looked at the patrol vehicle. Reyes made a U-turn and began to follow the brown sedan. The sedan immediately turned right on Yarbrough and increased speed. The officers engaged their lights and siren and accelerated. A winding high-speed chase ensued, in part along a dirt road adjacent to an irrigation canal. Eventually, a backup unit blocked the sedan's path and the chase ended. Under directions of the police, the three occupants exited the vehicle. Between the three subjects, the officers found $111.26. An additional $5.00 bill was found in the vehicle, as well as three pair of sunglasses. Officer Nick Rodriguez was sent back along the route of pursuit to search for the weapon. He found a sawed-off shotgun beside the road, near the intersection with the dirt road adjacent to the canal.

Co-defendant Giron testified in his own defense. He stated that the preceding month he and Appellant had repaired a blue 1969 Ford Mustang for the complainant, Mesa, in Las Cruces. Allegedly, Mesa told them he ran into a telephone pole while driving intoxicated. They repaired a fender, performed some other bodywork, replaced the front bumper and installed a new three-speed manual transmission—all for $325.00. Mesa gave them $50.00 when he left the vehicle with them on February 18. The repairs took three or four days. Mesa picked up the vehicle on February 26 and appeared to be happy with the results. He paid them an additional $75.00 and promised to pay the balance of $200.00 in a few days. Giron testified that Mesa never returned or contacted them. They had his work address in El Paso, and on March 18, decided to drive to the Thunderbird gas station in El Paso to collect their money. Silva was with them and doing the driving, despite the fact that the vehicle belonged to Appellant's wife.

Arriving at the station, Appellant and Giron entered. After shaking hands with

Mesa, they asked about the balance of the repair bill. Mesa purportedly told them he did not have $200.00 in cash. He gave Giron $80.00 and Appellant $20.00. He then removed the sawed-off shotgun from a shelf and offered it to Giron as an "accord and satisfaction" of the $100.00 balance. Giron testified that he did not want the shotgun but accepted it to avoid continuing difficulties over the debt. Giron and Appellant then left with Silva, eastbound on Alameda. He denied any particular reaction to the patrol vehicle passing in the opposite direction. He acknowledged that once the police made a U-turn and began following them they did speed up and flee. He stated that their only concern was being in possession of a prohibited weapon. He admitted throwing the shotgun out the window during the pursuit. On cross-examination, he denied ever having seen the shotgun prior to its being proffered by Mesa. He stated that he and Appellant did not have a formal repair shop in Las Cruces, just a building they used. They kept no business records.

Appellant did not testify. His attorney asked no questions of Giron and offered no other challenge or qualification to Giron's explanation. Appellant's son testified that his father did perform automobile repairs with Giron. The son helped his father work on a blue Ford Mustang in February, but he did not know the owner. Appellant's wife testified that he left the house between 12:15 and 12:30 p.m. on March 18, telling her that he was going to collect some money for work she had seen him do on a blue car.

Mesa testified that he did not own or have access to a Ford Mustang. He always drove his father's 1974 Ford Comet. He had never seen Appellant and Giron before. Both he and the station manager, Ramie Longoria, testified that in accordance with company policy, no weapons were kept on the premises.

The Appellant's four points of error all concern the State's rebuttal evidence demonstrating an extraneous offense attributable to co-defendant Giron, but not Appellant. In order to rebut the defensive evidence as to intent and to specifically impeach Giron's denial of prior possession of the shotgun, the State presented evidence that approximately three hours before the confrontation with Mesa, Giron and Silva were committing aggravated robbery of a bank in Las Cruces, New Mexico. Giron was armed with a sawed-off shotgun and Silva with a pistol. Two tellers, one of whom had gone to school with Giron, identified Giron in court. They also identified State's Exhibit No. One as appearing to be the same sawed-off shotgun used in the bank robbery. State's Exhibits Nos. 25 through 30 are photographs taken by the bank security camera showing Silva and Giron during the bank robbery, the sawed-off shotgun in Giron's hands.

■ Appellant's first two points of error challenge the trial court's denial of a pretrial motion for severance under Tex.Code Crim.Pro.Ann. art. 36.09 (Vernon 1981). Both Appellant and Giron had prior admissible convictions for DWI. Consequently, the mandatory severance under Article 36.09 was inapplicable. Appellant's complaint is under the last provision of the statute, contending that the trial judge should have severed the cause of action against Giron because the admissibility of the extraneous bank robbery offense, not involving the Appellant, would unduly prejudice Appellant in a joint trial.

■ The State contends that the issue was waived by the failure of the Appellant to present evidence in support of the motion for severance. *Sanne v. State*, 609 S.W.2d 762, 775 (Tex.Crim.App.1980); *Fisher v. State*, 681 S.W.2d 202 (Tex.App.—Houston [14th Dist.] 1984, PDRR). We do not mean to weaken that rule in rejecting the State's contention. We do, however, decline to apply it in this case because there was no factual controversy between the State and the defense as to the content of the anticipated extraneous offense evidence, the contingent nature of its intro-

duction as rebuttal or the consequences of its introduction with regard to each defendant. We further decline the preservation of error issue because we have concluded that the ultimate merits of these two points of error do not favor the Appellant.

■ Absent a disparity in prior admissible convictions between two or more co-defendants, the matter of severance rests within the sound discretion of the trial judge. *Younger v. State*, 457 S.W.2d 67 (Tex.Crim.App.1970). Reversal is only warranted if a defendant meets the heavy burden of demonstrating an abuse of that discretion. *Foster v. State*, 652 S.W.2d 474, 477 (Tex.App.—Houston [1st Dist.] 1983), *aff'd*, 693 S.W.2d 412 (Tex.Crim.App.1985). Proof of differing degrees of culpability among jointly tried parties to an offense does not necessitate severance. *Morales v. State*, 466 S.W.2d 293 (Tex.Crim.App.1971). The presentation of differing defenses, particularly if they are antagonistic, is certainly a factor to be considered by the trial judge in ruling upon the severance request. Here, however, there were no conflicts or antagonistic responses to the State's allegations and proof. In fact their evidence was mutually supporting. *See Mahavier v. State*, 644 S.W.2d 129, 133 (Tex.App.—San Antonio 1982, no pet.). Even Appellant's brief refers to the single "defense" presented by both defendants. "Unfortunately," Giron personally presented a more detailed account of that defense, particularly the "accord and satisfaction" involving the shotgun, and of the two was more susceptible to rebuttal and impeachment with the extraneous offense. Appellant could have maintained his "debt collection" defense and yet, through his counsel's examination of Giron, disassociated himself from the events following the emergence of the shotgun. He did not do so, in effect adopting Giron's explanation in toto.

■ When two defendants are jointly tried for the same offense, there is no abuse of discretion in denying a severance where the jury is instructed that damaging evidence admissible against only one accused is not to be considered as to his co-defendant. *Bolding v. State*, 493 S.W.2d 186 (Tex.Crim.App.1973); *Childs v. State*, 491 S.W.2d 907 (Tex.Crim.App.1973); *Oden v. United States*, 410 F.2d 103, 104 (5th Cir.), *cert. denied*, 396 U.S. 863, 90 S.Ct. 138, 24 L.Ed.2d 116 (1969) (cited in *Childs*). In this case, such an instruction was delivered to the jury. We do not agree with Appellant that the instruction was "weak and vague":

> You are not to consider the testimony on such other offense [the bank robbery] as any circumstance whatever against the defendant Arturo Olivares.

We do not find this to be such a case that the jury was incapable of adhering to that instruction. The State carefully elicited the fact from the extraneous offense witnesses that Appellant was not implicated in the bank robbery. Although there apparently was a third unidentified participant in the Las Cruces offense, that fact was also not disclosed to the jury. The witnesses and photographic exhibits all referred to only two participants—both identified as Giron and Silva. According to the testimony, they fled the bank robbery in a green and white pickup truck, clearly not the brown sedan belonging to Appellant's wife and used in the El Paso offense. The prosecutor emphasized the limiting instruction in her final argument, as did counsel for Appellant. We can perceive no harm or undue prejudice to the Appellant, either at the guilt stage or at punishment, emanating from the denial of the severance and the limited admission of the extraneous offense. In this case, Appellant consciously did not attempt to qualify for probation. The jury assessed his punishment at the minimum allowed by law for aggravated robbery—imprisonment for five years. Giron's punishment was assessed at imprisonment for eight years. *Compare Childs*, 491 S.W.2d at 909; *Johnson v. State*, 449 S.W.2d 237, 238 (Tex.Crim.App.1969). One might say that this not atypical El Paso jury was somewhat less than overly concerned about the El Paso armed robbery,

much less the Las Cruces bank robbery and implicit aggravated perjury. One may definitely say, however, that there was no prejudicial harm to the Appellant regarding the severance and extraneous offense issues. Points of Error Nos. One and Two are overruled.

■ Appellant's third and fourth points of error challenge the very admissibility of the extraneous offense, as to co-defendant Giron under general extraneous offense doctrines and as to the Appellant under the prejudicial "spill over" argument addressed above. As it relates to Giron, the extraneous offense evidence was certainly admissible under *Albrecht v. State*, 486 S.W.2d 97 (Tex.Crim.App.1972), as well as Tex.R. Crim.Evid. 404(b). Appellant misreads the restriction imposed by Tex.R.Crim.Evid. 608(b). That limitation must be read in the context of the overall subject matter addressed by Rule 608, "Evidence of Character and Conduct of Witness." The limitation precludes use of specific instances of misconduct, short of convictions, to attack credibility that has been raised and supported under Rule 608(a). That was not the case here. We are not dealing with general credibility evidence, impeachment and rebuttal under Rule 608. In the sense suggested by Appellant, because all State rebuttal evidence necessarily has some impeaching effect, Rule 608(b) would overrule *Albrecht* and deprive one-half of Rule 404(b) of any meaning. Here the extraneous proof of an aggravated, sawed-off shotgun robbery three hours before and forty some miles away from the indicted offense provided substantive evidence, not merely impeachment, of intent and scheme, rebutting the exculpatory explanation given by Giron. It provided specific substantive rebuttal evidence, not merely impeachment, of Giron's possession of the shotgun prior to the confrontation with Mesa at the gas station. The probative value of this evidence clearly outweighed any prejudice, given the limiting instruction which restricted its consideration as to Giron and absolutely prohibited its consideration as to Appellant.

With regard to the inadmissibility of the extraneous offense evidence because of its effect on the Appellant, the same considerations and arguments presented under the first two points of error are fully applicable. In addition, although not essential to our conclusions, Appellant may very well have received a more favorable limiting instruction than that to which he was entitled. To the extent to which he adopted Giron's testimonial defense, he was equally subject to rebuttal by the extraneous offense evidence. As previously suggested, he could have tactically disassociated himself from the shotgun aspect, if not through his own witnesses at least through his own examination of Giron. It might have been suggested that he did go to collect the debt with Giron, but did not know that Giron had and would use the shotgun and did not know about the prior bank robbery. It could then be argued that he was not a party to the acts independently committed by Giron from the moment the shotgun came out. He did not do so. Viewed from the jury's standpoint, a reasonable inference from the evidence presented by both defendants was that Appellant was adopting the entire explanation offered by Giron, thereby exposing himself to rebuttal by an extraneous offense even though he was not a participant therein. We are not called upon to suggest how the limiting instruction could have been more finely tuned under the peculiar development of this case without risking judicial comment on the evidence. The safest course was that elected by the trial judge— i.e., an absolute prohibition of consideration of the extraneous offense with regard to Appellant.

As previously stated, we find the evidentiary presentation to the jury, the limiting instruction, the arguments of counsel, and the respective punishments assessed sufficient to conclude that there was no prejudice to Appellant in the admission of the extraneous offense evidence at the joint trial. Points of Error Three and Four are overruled.

The judgment is hereby affirmed.