Kenneth Daniel HOWARD, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 07–94–0087–CR.

Court of Appeals of Texas, Amarillo.

April 4, 1995.

Law Office of Warren L. Clark, Warren L. Clark, Amarillo, for appellant.

. Charles David Blount and Wesley G. Clayton, Potter County Dist. Attys., Amarillo, for appellee.

Before REYNOLDS, C.J., and BOYD and QUINN, JJ.

QUINN, Justice.

Appellant Kenneth Daniel Howard, Jr. was convicted following a jury trial for delivery of a controlled substance. The jury assessed punishment at twenty-one (21) years confinement. In effort to overturn his conviction, the Appellant raises two points of error. The first concerns the closing argument of the prosecutor and whether it warranted a mistrial. The second involves whether, during the punishment phase, he was sufficiently identified as the individual described in two

prior orders deferring adjudication, which orders were admitted as evidence. Believing that no error occurred, we affirm the decision below.

## PERTINENT FACTS

The Appellant was tried for delivering one-half ounce of cocaine in exchange for $600. At the close of the guilt/innocence phase of the trial, the prosecutor orated the following:

I wish there was more. I wish there was a videotape, I wish there were photographs, I wish there was a tape recording, but there's not. It [the sale] happened too fast ... the question is, is that reason enough to have reasonable doubt? And I submit to you that it is not....

... And I think if you will notice and recall the focus of the Defense's cross-examination of Jerry Schwab and Bill Tucker was nothing. '[The Appellant] didn't do it.' That wasn't the focus. The focus was on Jerry Marez. 'He's a bad guy.' The focus was on the surveillance team. Why didn't they see anything? That's what the focus was on. It's not all on 'he [the Appellant] didn't do it.'

Well, ... Marez may be a very bad guy. He may be a terrible guy. I believe they want you to hate him so much; to dislike the DPS using him so much that you'll let a man who so willingly sold $600.00 worth of cocaine walk free, because you don't like ... Marez. But none of that really makes any difference ... That's an issue and that's a consideration for punishment....

But just because you don't like ... Marez, or just because you wish DPS had taken some photographs doesn't mean that he didn't do it....

And right now when you go back in that jury room that's your task, to determine whether or not he did it, not whether you like what the DPS did or wish they'd done a better job....

Immediately thereafter, the Appellant's counsel began his summation. A portion follows:

Now I believe, and submit to you, that the evidence in this case permits the following findings. I think that Marez was in trouble and he was in trouble before he ever crossed the state line ... I think that Marez hoped to improve his situation with the New Mexico authorities by setting someone up, and specifically by setting the [Appellant] up.

I think that the arrangements were made for this transfer well in advance by parties other than Schwab and Tucker to target the [Appellant] for a controlled substance transaction.

It appears, and I believe that the evidence supports this, that at Schwab's insistence attempts were made to conclude a drug deal, and, if anything, [the Appellant] did appear to aid Schwab in this endeavor. But, who are the primary actors in this case? There is no doubt that ... Marez, who I would refer to as a "Judas goat," was certainly the primary actor in the case.

Now, [the prosecutor], three times, talked about and asked a rhetorical question, how can you let a man who sold drugs walk away, even considering a loser like Marez. You know, if anything, [the Appellant] is a patsy. You know he is not a drug dealer ... He is not a major mover of controlled substances ... He is a patsy ... Schwab was the moving force behind wanting to do the deal. With Marez pushing and Tucker watching.

Again ... did you ever hear anyone talk about what the [Appellant] would gain from this transaction? ... everyone has something to gain, and has gained ... Marez ... gained consideration from his problems in New Mexico ... Schwab gained a notch in his belt ... The victim has gained an indictment. He's a patsy. He's usable. He's convenient. He's here ... but according to the law and according to the instructions, as they apply to the state of mind required of an actor, that does make him a criminal.

In rebuttal, the prosecution ended by stating:

Well, know the focus is on the [Appellant]. He didn't intend to do it. [sic] Because somehow he was a patsy.

Once upon a time there was an assistant district attorney who stood up on this

ledge here and jumped down and started singing 'Hopping Down Bunny Trails.' Now I don't have that kind of voice to do that. If you don't know what bunny trails are, it's a common way to divert a jury away from the central issue. And that's the whole point of [defense counsel's] argument. Don't think about what he did, think about everything else but the fact he sold cocaine to ... Schwab. Think about ... Marez, think about the fact that the surveillance team didn't get pictures or photographs or videos. Think about everything else, but don't think about what really occurred here, which was the sale of $600.00 of cocaine, by that man, to an undercover DPS agent. Bunny trails.

Now, I admire [the Appellant's counsel]. Any defense attorney worth his salt will suggest **false issues** to a jury, and that's what they are.

(emphasis added).

Upon hearing the last comment, the Appellant's counsel rose and voiced his objection. The statement, he protested, insinuated that he "fomented or promoted some falsehood before the jury ... our objection is that it is striking at the [Appellant] over the shoulders of his attorney." The court sustained the objection, instructed the jury to disregard the reference to any "false issues," but refused to grant a mistrial.

After the jury found the Appellant guilty, the parties began the punishment phase of the trial. Only one witness testified, and he happened to be an ex-assistant district attorney. He testified about his prosecuting the Appellant for burglary and debit card abuse, the names of the Appellant's defense counsel during those two prosecutions, the entry of plea agreements, the Appellant's guilty pleas, and his presence in the courtroom when the trial court ordered deferred adjudication as a means of resolving those two prosecutions. The witness then identified the Appellant as the individual previously granted deferred adjudication.

Next, the witness was asked to review the State's Exhibits two and three, which represented "certified copies of orders deferring adjudication." After questioning him about the concept of deferred adjudication, the prosecutor asked "with both of these cases— did [the Appellant] plead guilty to both of these offenses on the same day?" The witness answered "[m]y recollection is that he did, yes. Both on the 18th of November, 1992." The two documents were then admitted as evidence without objection.

During cross-examination, Appellant's counsel also referred the witness to "State's Exhibits 2 and 3 on an individual known as Kenneth Daniel Howard, Jr." and received an affirmative answer to his question asking whether both exhibits involved deferred adjudication. Next, defense counsel propounded:

Q. Therefore, based on the knowledge before you now and what knowledge you have at this present time you can state, looking at that [the two exhibits], that Kenneth Daniel Howard has suffered no felony conviction in this state or any other state?

A. That's correct.

Q. As we stand here today, January 6th, 1993?

A. Based on these two documents that's all I can say is that he hasn't been adjudicated guilty of anything.

## POINT OF ERROR ONE

■ In point of error one, the Appellant protests the trial court's refusal to grant a mistrial due to the state's improper closing argument. The court disagrees.

■ Permissible jury argument falls within four categories: (1) summation of the evidence, (2) reasonable deductions from the evidence, (3) responses to opposing counsel's argument, and (4) pleas for law enforcement. *Coleman v. State*, 881 S.W.2d 344, 358 (Tex. Crim.App.1994); *Coble v. State*, 871 S.W.2d 192, 205 (Tex.Crim.App.1993), *cert. denied*, —— U.S. ——, 115 S.Ct. 101, 130 L.Ed.2d 50 (1994). None permit striking at the accused through his counsel. Indeed, accusing the latter of unsubstantiated instances of misconduct exceeds the bounds of propriety and can result in reversible error. *Gomez v. State*, 704 S.W.2d 770, 771–72 (Tex. Crim.App.1985); *accord Coble v. State*, 871

S.W.2d at 204–05 (stating that a remark that strikes at the defendant through his counsel is improper).

Yet, one must differentiate between comments which facially appear aimed at defense counsel but actually strike at his argument. *Coble v. State*, 871 S.W.2d at 205. For instance, the *Coble* court held that comparing a defense counsel's propositions to "something ridiculous" was not a personal attack upon counsel but upon his argument. *Id.* Having reasonable basis in the evidence and been made in good faith, the comparison was permissible. *Id.*

■ Nor was urging the jury to avoid defense counsel's effort to "smoke-screen you" since "he has smoke-screened you enough" considered a personal attack, according to the Court of Criminal Appeals. *Gorman v. State*, 480 S.W.2d 188, 190–91 (Tex.Crim.App.1972). The utterance simply constituted a reply to defense counsel's attempt to minimize the effect of his client's prior criminal record. *Id.; accord, Tilbury v. State*, 890 S.W.2d 219, 223–24 (Tex.App.— Fort Worth 1994, no hist.) (holding the argument proper because it did not accuse defense counsel of manufacturing *evidence* but of manufacturing *reasonable doubt* ); *Fegurgur v. State*, 734 S.W.2d 103, 106 (Tex.App.— Austin 1987, no pet.) (holding the prosecutor's statement that "not once did she [defense counsel] ever give you any reason why this self-serving exculpatory . . . pack of lies that her client told . . . Miller, she never told you why she thinks this is credible evidence because this can't be believed to be credible" as proper, invited response to defense counsel's argument). Furthermore, the chance that the utterance carries some derogatory connotation *vis-a-vis* the honesty of defense counsel does not necessarily taint it. *Tilbury v. State*, 890 S.W.2d at 224.

At bar, the prosecutor's comment was akin to those allowed in the cases cited above. The Appellant had sought to minimize his criminal activity by castigating the bona fides of Marez and Schwab. In reply, the prosecutor suggested that the motivations of the two witnesses were irrelevant. That the Appellant acted as a "patsy" for "bad guy[s]" was also irrelevant to the issue of guilt. In effort to make the jury aware of this, the prosecutor then analogized the defense tactic to a "bunny trail" and charged defense counsel with presenting "false issues." Contrary to the Appellant's point of error, never was defense counsel accused of manufacturing "false *evidence.* " Furthermore, the phraseology invoked was no more egregious than that permitted in *Coble, Gorman* and *Tilbury* and amounted to an attack upon counsel's argument as opposed to counsel himself. Moreover, to read some insinuation of wrongdoing into it requires disregard for the context in which it was made, a tact which the court will not adopt. Thus, any impermissibly derogatory connotation was de minimis at best.

Moreover, once the court sustained the Appellant's objection, the prosecution ceased further reference to "false issues," recharacterized the defense contention as one "focus[ing] on everything else but what happened," and stopped. Nothing further was said which could have enhanced whatever derogatory connotation the phrase had. Nothing else was said which could have thwarted the ameliorative effect of the court's admonition to disregard.

Given its brevity, its de minimis derogatory content, and its direct relationship to Appellant's argument, the comment was within the boundaries of permissible response. Being permissible, it did not warrant a mistrial. Thus, the first point of error is overruled.

### POINT OF ERROR TWO

■ Next, the Appellant urges, in his second point, that the evidence was insufficient to identify him as the individual described in the State's Exhibits 2 and 3. By nevertheless admitting them into evidence, the court tainted the proceeding. The court again disagrees and overrules the point.

■ Before a prior conviction can be considered in a later prosecution, the state must prove that the person referenced in the conviction is the same one involved in the instant proceeding. *Rosales v. State*, 867 S.W.2d 70, 72–73 (Tex.App.—El Paso 1993, no pet.). Establishing this identity of parties is a procedural matter entailing a question of

conditional relevance. *Id.* In other words, the relevance of a prior conviction is conditioned upon the production of evidence sufficient to show that the defendants are one and the same. *Id.* If such evidence is lacking but the court nevertheless admits the prior conviction, the defendant must object. *Id.* at 73 (holding that a motion to strike should be granted thereby withdrawing the evidence from consideration); *Ex parte Russell,* 738 S.W.2d 644, 647 (Tex.Crim.App. 1986) (holding that one who wishes to complain on appeal about the use of prior convictions admitted as evidence during the punishment phase must make a timely objection); *Logan v. State,* 482 S.W.2d 229, 232 (Tex. Crim.App.1972) (holding that in absence of an objection, any error is waived).

Here, when asked if he objected to the admission of Exhibits two and three, the Appellant answered "no." He also used the documents on his own behalf to establish that he had never been "adjudicated guilty of anything." Under these circumstances, the court must conclude that any objection to and prejudice, if any, emanating from their admission was waived. *Id.*

Accordingly, the judgment and sentence rendered below is affirmed.