Robert SMITH, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–97–512–CR.

Court of Appeals of Texas, Corpus Christi.

July 15, 1999.

Richard Lee Urban, Boerne, for Appellant.

Steven C. Hilbig, Criminal Dist. Atty., Angela Moore, Asst. Dist. Atty., San Antonio, for State.

Before Chief Justice SEERDEN and Justices HINOJOSA and YAÑEZ.

## OPINION

Opinion by Justice HINOJOSA.

Appellant, Robert Smith, and co-defendant, Hardesty Bogany, pleaded guilty to the offense of aggravated robbery,[1] and a jury assessed punishment at sixty years imprisonment for each defendant. By four points of error, Smith contends the trial court erred by denying his motion to sever, by admitting evidence of prior convictions, and by refusing to grant a writ of habeas corpus. We affirm.

Shortly after noon on April 10, 1996, Smith entered the San Antonio Jewelry Store. As he entered the store, Smith brandished a .357 Magnum pistol and ordered everyone to get down on the floor. He placed a block of wood in the door to prevent it from closing and locking. Three other men then entered the store, smashed jewelry display cases, and stuffed jewelry into black duffel bags. Approximately $70,000 worth of jewelry was removed from the store. Smith appeared to some witnesses to be the leader because he was giving directions to the other men. Realizing a video camera was in operation, two of the robbers forced two employees to the second floor of the store to retrieve any videotape of the robbery. Both of these employees had guns held to the backs of their heads, and one endured a cocked gun being placed in his mouth. Another employee escaped from the store as the robbery began and called police from a nearby gas station. A mechanic from the station went to the store parking lot and disabled the getaway car. As the police arrived, the robbers ran into the surrounding neighborhood. They were eventually captured in the home of an ill, elderly woman. When police returned the four men to the store, employees identified them as the robbers.

Smith filed a pretrial motion to sever his trial from Bogany's trial because Bogany had allegedly sexually assaulted a cell mate while he was in jail awaiting trial in this case. After a hearing, the trial court denied the motion. Initially, Smith and Bogany pleaded not guilty, but after most of the State's evidence was presented, the men changed their pleas to guilty and requested that the jury assess punishment. Smith did not reurge his motion to sever. The jury heard evidence regarding the

---

1. TEX. PEN.CODE ANN. §§ 29.02 & 29.03 (Vernon 1994).

alleged sexual assault as well as evidence of Smith's prior convictions. The jury returned a guilty verdict, as instructed, and assessed punishment at sixty years imprisonment for each defendant.[2]

## I. SEVERANCE

■ By his first point of error, Smith contends the trial court erred by failing to sever his trial from Bogany's trial. By his second point of error, Smith contends the failure to sever violated his due process right as guaranteed by the Fourteenth Amendment to the United States Constitution.

■ The code of criminal procedure provides:

> Two or more defendants who are jointly or separately indicted or complained against for the same offense or any offense growing out of the same transaction may be, in the discretion of the court, tried jointly or separately as to one or more defendants; provided that ... in cases in which, upon timely motion to sever, and evidence introduced thereon, it is made known to the court that ... a joint trial would be prejudicial to any defendant, the court shall order a severance as to the defendant whose joint trial would prejudice the other defendant or defendants.

TEX.CODE CRIM. PROC. ANN. art. 36.09 (Vernon 1981). Accordingly, severance is not a matter of right but rests within the sound discretion of the trial court unless a joint trial would, as a matter of law, prejudice a co-defendant. *Garza v. State*, 622 S.W.2d 85, 91 (Tex.Crim.App.1980); *Silva v. State*, 933 S.W.2d 715, 719 (Tex.App.—San Antonio 1996, no pet.). Severance impacts more than just the guilt/innocence phase of a trial. *Fugon v. State*, 963 S.W.2d 135, 137 (Tex.App.—Houston [1st Dist.] 1998, pet. ref'd).

■ When two defendants are tried jointly for the same offense, there is no abuse of discretion in denying a severance if the jury is instructed that damaging evidence admissible against only one accused is not to be considered against his co-defendant. *Childs v. State*, 491 S.W.2d 907, 909 (Tex.Crim.App.1973) (evidence one defendant committed aggravated robbery just hours prior to committing offense at issue did not warrant severance when jury was properly instructed), *overruled on other grounds, Ward v. State*, 591 S.W.2d 810 (Tex.Crim.App.1978) (op. on reh'g); *Olivares v. State*, 785 S.W.2d 941, 944 (Tex.App.—El Paso 1990, no pet.) (jury instruction was sufficient to prevent error when evidence was admitted to prove co-defendant was in possession of drug paraphernalia at time of arrest); *Simon v. State*, 743 S.W.2d 318, 322 (Tex. App.—Houston [1st Dist.] 1987, pet. ref'd) (finding no error where trial court "very carefully instructed the jury that their consideration of such evidence was limited to the party against whom it was admitted"); *see also Oden v. United States*, 410 F.2d 103, 104 (5th Cir.), *cert. denied*, 396 U.S. 863, 90 S.Ct. 138, 24 L.Ed.2d 116 (1969). When the jury assesses similar punishments against the co-defendant, no showing of prejudice is established in the joint trial. *Childs*, 491 S.W.2d at 909 (citing *Johnson v. State*, 449 S.W.2d 237, 238 (Tex.Crim.App.1969)).

In the case before us, the trial court admonished the jury, prior to the sexual assault testimony, that it was to be considered against Bogany only. At Smith's request, the trial court repeated the admonishment during the presentation of the evidence. During the testimony of the sexual abuse victim, the State asked the victim to focus on Bogany's behavior. The court's charge instructed the jury that the evidence could only be considered as to the person against whom it was offered. During closing argument, coun-

---

**2.** Bogany pleaded *nolo contendere* to the sexual assault. He was found guilty of sexual assault, and his punishment was assessed at seventy years imprisonment to run concurrently with the punishment he received for the aggravated robbery.

sel for both defendants cautioned the jury to consider only the acts of each defendant in determining the punishment as to that defendant.

We conclude the jury was properly instructed as to what evidence to weigh against each defendant. Both defendants were sentenced to sixty years imprisonment for their participation in a very aggressive and violent crime. We hold the trial court did not err by failing to grant Smith's motion to sever. We further hold that such failure to sever did not violate Smith's due process right under the Fourteenth Amendment to the U.S. Constitution. Smith's first and second points of error are overruled.

## II. PRIOR CONVICTIONS

By his third point of error, Smith contends the trial court erred in admitting improperly identified evidence of his prior convictions.

■ The code of criminal procedure provides that during the punishment phase, a trial court may admit evidence of prior criminal convictions. TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a) (Vernon Supp. 1999). Certified copies of a judgment and sentence are admissible. TEX.R. EVID. 901(b)(7); *Beck v. State*, 719 S.W.2d 205, 210 (Tex.Crim.App.1986). These documents standing alone, however, are not sufficient to prove a prior conviction. *Beck*, 719 S.W.2d at 210. The State must go forward with independent evidence that the defendant is the same person named in the previous conviction. *Id.; Howard v. State*, 896 S.W.2d 401, 405 (Tex.App.—Amarillo 1995, pet. ref'd); *Rosales v. State*, 867 S.W.2d 70, 72 (Tex.App.—El Paso 1993, no pet.). Without evidence linking the defendant to the prior conviction, evidence of the prior conviction is simply not relevant. *Rosales*, 867 S.W.2d at 72.

The court of criminal appeals has recognized four ways to prove prior convictions:

(1) testimony of a witness who personally knows the defendant and the fact of his prior conviction and identifies him;

(2) stipulation or judicial admission of the defendant that he has been so convicted;

(3) introduction of certified copies of the judgment, sentence, and record of the Texas Department of Corrections or a county jail including fingerprints of the accused supported by expert testimony identifying them with known prints of the defendant; or

(4) comparison by the fact finder of a record of conviction which contains photographs and a detailed physical description of the named person, with the appearance of the defendant, present in court.

*Daniel v. State*, 585 S.W.2d 688, 690–91 (Tex.Crim.App.1979) (citations omitted). These, of course, are not exclusive. *Littles v. State*, 726 S.W.2d 26, 28 (Tex.Crim.App. 1984).

■ Establishing the identity of the defendant is a procedural matter entailing a question of conditional relevance. *Howard*, 896 S.W.2d at 405–06; *Rosales*, 867 S.W.2d at 72. The relevance of a prior conviction is conditioned upon the production of evidence sufficient to show that the defendants are one and the same. *Beck*, 719 S.W.2d at 210–11; *Howard*, 896 S.W.2d at 406; *Rosales*, 867 S.W.2d at 72. Evidence should not be excluded merely because its relevance may depend upon the production of additional evidence at a later point in the trial or because its probative strength alone is insufficient to prove a significant fact. *Fuller v. State*, 829 S.W.2d 191, 197 (Tex.Crim.App.1992); *see* TEX.R. EVID. 104(b).

■ When authenticated copies of conviction records are offered into evidence to prove a prior conviction is part of a defendant's "prior criminal record," it is not essential that supporting "identification" evidence precede the admission of the evidence. *Beck*, 719 S.W.2d at 210. If, after

all proof on the fact in question has been received, the evidence does not, in the aggregate, support a rational finding that the defendant is the same person as the one previously convicted, the fact finder should not be allowed to consider the evidence of the conviction. *See Fuller,* 829 S.W.2d at 197; *Beck,* 719 S.W.2d at 210–11. In the case of evidentiary facts, it means that a motion to strike should be granted to withdraw the evidence from consideration. *Fuller,* 829 S.W.2d at 197.

■ Smith applied for probation in this case, swearing that he had not been previously convicted of a felony in this or any other state. During jury voir dire, Smith's counsel stressed the possibility of probation for his client. The State ran an unsuccessful preliminary check for prior convictions. On the day before the case went to the jury, the State decided to present Smith's jail records to the jury to rebut defense evidence that Smith had been reformed while in jail for the offense at issue. In talking with jail officials, the State learned of a possible prior conviction. After running a more thorough search, the State discovered Smith's prior convictions in Harris County and gave notice of its intent to present evidence of the convictions to the jury. Before lunch on the last day of the trial, the State informed the trial court it was attempting to get a "pen packet" on Smith. After lunch, the State told the court it was waiting for judgments from Houston and wanted to call some witnesses out of order. At that point, the following colloquy occurred:

> Court: Actually, while I'm thinking about it, I was hoping that we would be finished this afternoon and going to the jury. And I hope I'm not reading on here that you need a day, until Monday, to get this stuff.
>
> Prosecutor: That's what you're reading, yes.
>
> Court: Well, you're not spelling it out real well.
>
> Prosecutor: Okay.

> Court: My suggestion is, if it's a package of some form or judgment, that you have it faxed.
>
> Prosecutor: Okay. It won't be a certified copy, obviously, but we—there are—
>
> Court: Well, you can fax the original of it. I don't know how much you have left, but I was really hoping that we could get to the jury this afternoon.
>
> Defense Attorney: I don't think so.
>
> Court: Because I was going to work late to accomplish that for them so they don't have to come back Monday.
>
> Prosecutor: I don't think we can make it.
>
> Court: Okay.
>
> Defense Attorney: We have three witnesses, Judge.
>
> Prosecutor: And he's got—
>
> Court: I don't know that I'm going to give you the weekend to get that stuff. So you might wait.
>
> Prosecutor: We can get it faxed. We can do that.

The trial continued with witnesses being called until the following exchange between the court and the prosecutor:

> Prosecutor: Your Honor, I wanted you to know that we have received a faxed copy.
>
> Court: This is Mr. Smith, right?
>
> Prosecutor: We have received copies and I will go through this. And what I looked for was the automatic conviction. He was on deferred. He was adjudicated guilty, sent to TDC for three years. There are several other prior offenses that I think are certainly relevant to punishment that we would like to introduce, as well.
>
> The dilemma is this: I do not anticipate—you can correct me, Mr. Urban, but I don't anticipate they're going to stipulate. The faxed copies are not good enough for the prints to come out very clearly. So one thing I could do now is—
>
> Court: Are there photographs in it?

Prosecutor: No. They're just the judgments. And we couldn't—the photographs are kept over at the jail, which would have required—

Court: It's not a pen packet from TDC with a photograph?

Prosecutor: No. It's the judgment where he was sent. The pen packet would take longer to get than this would.

We can establish through an NCICTC of the printout, basically, kind of like DNA, through fingerprint classification that it's such-and-such percentage, would be a hand-typed deal. It wouldn't be conclusive. But if the Court were willing, I can represent to you as an officer of the Court we have the originals being sent, Fed–Exed. They'll be here Monday morning. If you would allow us with that condition to get these in front of the jury for now, provided that we can tie it all up through the originals, the exact proper way—

Court: Well, I didn't have any problem with proving up—of letting in the fax with an original to come and be attached to the record. And if for some reason it turned out it wasn't right, you'd get a new trial.

Prosecutor: That's fine. We're sure of that.

After further clarification about what would be admitted and what was expected of the State, the exchange continued as follows:

Court: Well, here's the thing. The Court is quite disturbed by your client's voir dire on probation. When, in fact, there is apparently a prior felony conviction. That's a perpetration of a fraud upon this Court.

Because of the time constraints, I am real concerned about the jury. I know one of the ladies was—had asked if we were finishing today. I want them to be able to finish today, or this evening, or whatever it takes them, or tomorrow if they have to be sequestered. But I know they all have jobs and money to earn and all of that kind of stuff. And I don't want to bring them down here next week.

I do not have a problem if there is a certification that goes with those from the Clerk saying that those were certified records. Is there?

Prosecutor: We don't have a certification saying that they are certified records, Judge. We got these faxed over from the D.A.'s office who received them from the Clerk's office. But we might be able to obtain that. Normally, they do the little seal and signature and all of that.

Court: Right, that makes a public record admissible.

Prosecutor: Right. Of course, you can't do that over a fax. I mean, it's not—

Court: You're not going to have an original. I really have no problem in the jury knowing about prior convictions. I think that my position in relation to this would be that I would admit those fax copies, have a hearing, let those in front of the jury, have a hearing next week in relation to the originality of the document, and if it turns out that any of those are not of this Defendant, grant a new trial—

Prosecutor: Okay.

Court:—as a remedy for allowing it, basically, because I think this Defendant tried to defraud this Court. And I'm not happy about it. So I am prepared to allow that.

After more discussion, the trial court further admonished the State, "Now, before you offer all of those, you understand, State, that if any single one of those you prove—you cannot prove by fingerprints, I'm going to grant a new trial?"

At this point, Smith objected to the admission of the faxed copies of the judgments on multiple grounds. Smith complained he was being denied his Sixth

Amendment right to cross-examination. He further contended the copies contained hearsay, that some were illegible, and that the proper predicate had not been established for their admission. The trial court overruled the objections and offered this final commentary on the matter:

> For the record, I'm going to say it one more time what I intend to do, because I believe the question of the admissibility of those exhibits is one for the court. The question of relevancy revolves around prior convictions of your client. I have informed the State, and as officers of the Court, they tell me that the TCIC comes back and shows its them. These are the records out of Houston.
>
> I'm going to do a somewhat unique procedure, but I'm going to admit those in front of the jury for their use, and then I will conduct a hearing this Tuesday at 8:30, and certifications on them, although I noted that those were certified—on the bottom there's a little stamp, and be able to link up the fingerprints for purposes of identification on making them admissible.

State's Exhibit Nos. 88 through 95 were then admitted into evidence. Shortly thereafter, the jury was charged, and it returned a punishment verdict of sixty years imprisonment.

Prior to the Tuesday hearing, the State received certified originals of the faxed copies. The certified originals were marked as State's Exhibit Nos. 96 through 103. At the hearing, Officer Richard Contreras, a fingerprint examiner for the San Antonio Police Department, testified that State's Exhibit Nos. 96 through 103 were the same as the State's Exhibit Nos. 88 through 95. Because the fingerprints were smudged in copying, however, he could not conclusively identify the prints on any of the exhibits as Smith's. Contreras explained he would need the original or xeroxed copy of the jail cards to make a proper identification. The State then informed the trial court it would need an additional forty-eight hours to procure the

Harris County jail cards. Although Smith objected that "today was the date set for this hearing," the trial court set another hearing for the following Tuesday.

At the second hearing, Officer Contreras was again called to testify. He then testified that State's Exhibit No. 76 was a card he had made of Smith's fingerprints. He then identified State's Exhibit No. 104 as a certified copy of a criminal history record reflecting the offense of evading arrest. Contreras testified the cause number on State's Exhibit No. 104 matched with the cause number on State's Exhibit No. 102, which was an original copy of a trial exhibit. He further testified the fingerprints on State's Exhibit No. 76 matched with those on State's Exhibit No. 104. Contreras then compared the prints on State's Exhibit Nos. 105 through 108 and found they matched those fingerprints on State's Exhibit No. 76. Although Officer Contreras was cross-examined before the trial court, Smith objected that he had not been able to question the officer in front of the jury. The trial court overruled the objection and found the evidence of prior convictions admitted before the jury was admissible, relevant, and properly introduced. The trial court then sentenced Smith in accordance with the jury verdict.

The procedure set forth above was unorthodox and, in the trial court's words, "unique," but it was not reversible error. *See* Tex.R.App. P. 44.2. As the trial court noted, whether the State could prove that Smith's fingerprints were the same as those on the exhibits admitted before the jury went to the issue of admissibility only, which was a question for the trial court. The trial court recognized it had one option in the event the evidence had been improperly admitted—to grant Smith a new punishment trial. The State was cautioned the trial court would exercise that option if proper identification could not be proven. After reviewing all of the testimony and examining the exhibits, we conclude that State's Exhibit Nos. 88 through 95 were relevant evidence for the punish-

ment phase and properly admitted. Smith's third point of error is overruled.

### III. PRETRIAL WRIT OF HABEAS CORPUS

#### A. *Untimely Indictment*

By his fourth point of error, Smith contends the trial court erred by denying his petition for writ of habeas corpus. Smith argues that under articles 32.01 and 28.061 of the code of criminal procedure, his indictment was not timely and should have been dismissed with prejudice. The State responds that articles 32.01 and 28.061 are unconstitutional violations of the separation of powers clause. Alternatively, the State argues that Smith's petition for writ of habeas corpus is moot because he was indicted prior to any ruling on his petition.

█ This case was originally filed in the San Antonio Court of Appeals and transferred to this Court by the Texas Supreme Court. This case raises the issue of what precedent applies in a transfer case. We agree with the San Antonio Court of Appeals, "the answer is that we are not to blindly apply [any precedent], but are to reach our best conclusion as to what the law of the State of Texas is on this issue." *American Nat'l Ins. Co. v. International Bus. Mach. Corp.*, 933 S.W.2d 685, 687 (Tex.App.—San Antonio 1996, writ denied).

At the time of Smith's arrest, the following statutes, in relevant part, were applicable:

**Art. 32.01. Defendant in custody and no indictment presented**

When a defendant has been detained in custody or held to bail for his appearance to answer any criminal accusation before the district court, the prosecution, unless otherwise ordered by the court, for good cause shown, supported by affidavit, shall be dismissed and the bail discharged, if indictment or information be not presented against such defendant at the next term of the court which is held after his commitment or admission to bail.

TEX.CODE CRIM. PROC. ANN. art. 32.01 (Vernon 1989).

**Art. 28.061. Discharge for delay**

If a motion to set aside an indictment, information, or complaint for failure to provide a speedy trial is sustained, the court shall discharge the defendant. A discharge under this article or Article 32.01 of this code is a bar to any further prosecution for the offense discharged and for any other offense arising out of the same transaction[.]

TEX.CODE CRIM. PROC. ANN. art. 28.061 (Vernon 1989).[3]

**§ 24.139. 37th Judicial District (Bexar County)**

(d) The 144th, 175th, 186th, 187th, 227th, 289th, and 290th district courts shall give preference to criminal cases. The terms of those courts begin on the first Mondays in January, March, May, July, September, and November. Each term continues until the court has disposed of the business for that term.

TEX. GOV'T CODE ANN. § 23.139(d) (Vernon 1988).[4]

Smith was arrested on April 10, 1996, and released on bond on April 13. He failed to appear before the trial court on May 10, 1996, as scheduled. His bond was ordered forfeited and a warrant issued for his arrest. Smith was rearrested on June 10, 1996, and the indictment was presented

---

**3.** Articles 32.01 and 28.061 were amended effective May 26, 1997. Article 32.01 now provides that the indictment must be presented by the end of the next term of the court after commitment or admission to bail or within 180 days of commitment or admission to bail, whichever is longer. TEX.CODE CRIM. PROC. ANN. art. 32.01 (Vernon Supp.1999). Article 28.061 was amended to delete any reference to article 32.01. TEX.CODE CRIM. PROC. ANN. art. 28.061 (Vernon 1999).

**4.** Section 24.139(d) was amended in 1997 and now sets the terms for these courts to begin on the first Mondays in January and July. TEX. GOV'T CODE ANN. § 24.139(d) (Vernon Supp. 1999).

against him on August 21, 1996. To be timely, the State had to present the indictment against Smith on or before June 30, 1996, the end of the next court term after his original arrest. The petition for writ of habeas corpus was filed on May 23, 1997, more than nine months after Smith was indicted.

The State did not attempt to show good cause as required by article 32.01 for failing to timely indict Smith. Instead, the State relied primarily on its complaint of an unconstitutional violation of separation of powers. Unless either article 32.01 or 28.061 is unconstitutional, Smith was entitled to have the cause against him dismissed with prejudice.

### B. Constitutionality of Articles 32.01 & 28.061

■ The separation of powers doctrine provides for three branches of government, each of which is forbidden from exercising powers attached to one of the other branches. Tex. Const. art. II, § 1. County and district attorneys are included within the judicial branch pursuant to article V. *Meshell v. State*, 739 S.W.2d 246, 253 n. 9 (Tex.Crim.App.1987); *see* Tex. Const. art. V, § 21. Their primary function is "to prosecute the pleas of the State in criminal cases." *Meshell*, 739 S.W.2d at 252. As such, the district attorneys are entitled to protection under the separation of powers doctrine. *See id.* Thus, the legislature cannot remove or abridge a district attorney's exclusive prosecutorial function unless authorized by an express constitutional provision. *See id.* at 254–55. Our task, then, is to determine whether articles 32.01 and 28.061 abridge that exclusive prosecutorial function.

■ Article 32.01 became effective in 1966, some twenty years before the 1987 effective date of article 28.061 as quoted above. *See* Act of May 27, 1965, 59th Leg., R.S., ch. 722, § 1, 1965 Tex. Gen. Laws 317, 564 (effective date January 1, 1966) (amended 1997); Act of May 22, 1987, 70th Leg., R.S., ch. 383, § 1, 1987

Tex. Gen. Laws, 1883, 1887 (amendments effective September 1, 1987) (amended 1997). Prior to the 1987 amendments to article 28.061, if a prosecution was dismissed pursuant to article 32.01, a defendant could again be charged for the same offense. *See Frenzel v. State*, 963 S.W.2d 911, 915 (Tex.App.—Waco 1998, pet. ref'd); *Fisk v. State*, 958 S.W.2d 506, 507 (Tex.App.—Texarkana 1997, pet. ref'd); *State v. Ybarra*, 942 S.W.2d 35, 38 (Tex.App.—Corpus Christi 1996, pet. dism'd); *Norton v. State*, 918 S.W.2d 25, 28 (Tex.App.—Houston [14th Dist.] 1996, pet. dism'd). With the 1987 amendments to article 28.061, and prior to the 1997 amendments, a dismissal under 32.01 was made with prejudice. *See Ybarra*, 942 S.W.2d at 38.

All appellate courts that have considered the constitutionality of article 32.01, have found the statute constitutional in and of itself. *See Steinmetz v. State*, 968 S.W.2d 427, 430 (Tex.App.—Texarkana 1998, no pet.); *Ex parte Torres*, 966 S.W.2d 723, 729 (Tex.App.—San Antonio 1998), *vacated*, 993 S.W.2d 662, (Tex.Crim.App. 1999); *Frenzel*, 963 S.W.2d at 915; *Ex parte Barnes*, 959 S.W.2d 313, 319 (Tex.App.—Fort Worth 1997, pet. dism'd); *Ex parte Mallares*, 953 S.W.2d 759, 763 (Tex.App.—Austin 1997, no pet.); *State v. Condran*, 951 S.W.2d 178, 190 (Tex.App.—Dallas 1997, pet. dism'd); *Norton*, 918 S.W.2d at 29. After reviewing these cases, we agree with the reasoning set forth therein.

Article 32.01 appears to be grounded in the Texas Constitution, which states that "no person shall be held to answer for a criminal offense, unless on an indictment of a grand jury." Tex. Const. art. I, § 21. The article protects an accused's right to a grand jury indictment by creating a right to be released from prison or from bail if not indicted within a certain time. *Condran*, 951 S.W.2d at 189. Although article 32.01 burdens the prosecutorial function, it is not an undue infringement. The State may avoid the dismissal if it can show good cause for the failure to timely indict. Tex. Code Crim. Proc. Ann. art. 32.01. Standing

alone, article 32.01 requires only that the case against a defendant be dismissed. The statute does not bar a subsequent indictment and prosecution. We hold article 32.01 is constitutional.

■ When considering the constitutionality of article 28.061, the courts are split in their findings. The First Court of Appeals held in companion cases, *Nguyen v. State*, 882 S.W.2d 471 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd) and *Nix v. State*, 882 S.W.2d 474 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd), that article 28.061 was constitutional. The State argued in those cases that *Meshell*[5] completely voided article 28.061 or, in the alternative, that the *Meshell* reasoning also applied to the 1987 amendments to 28.061. *Nguyen*, 882 S.W.2d at 472, 473. The Houston court held that article 28.061 was constitutional because *Meshell* voided only that portion which was the enforcing mechanism for the Speedy Trial Act. *Id.* at 473. The court found, without clearly explaining why, that the *Meshell* reasoning did not apply to article 28.061 as amended in 1987. *Id.* The San Antonio Court of Appeals has also held 28.061 to be constitutional, primarily because of the good cause provision of article 32.01. *Ex parte Torres*, 966 S.W.2d at 728–29.

On the other hand, the Dallas, Fort Worth, and Waco courts have determined that article 28.061, as an enforcing mechanism of article 32.01, is unconstitutional. *Frenzel*, 963 S.W.2d at 916; *Barnes*, 959 S.W.2d at 320; *Condran*, 951 S.W.2d at 191. After reviewing the legislative history of the 1987 amendments to article 28.061, these courts determined that the sole purpose of the amendments was "to force prosecutors to clear the court's docket," thus unduly infringing on a prosecutorial function. *Condran*, 951 S.W.2d at 190; *see Frenzel*, 963 S.W.2d at 915; *Barnes*, 959 S.W.2d at 320. No thought was given to the purpose of a speedy indictment or to

an appropriate remedy. *Condran*, 951 S.W.2d at 191. These courts also found that no consideration was given to the uneven effect of the varying lengths of court terms within the state and to situations beyond the State's control. *Frenzel*, 963 S.W.2d at 915; *Barnes*, 959 S.W.2d at 320; *Condran*, 951 S.W.2d at 190–91.

After reviewing these six opinions, we agree with the Dallas, Fort Worth, and Waco courts that article 28.061's bar to prosecution unnecessarily shifts the focus from releasing the accused to infringing on the State's ability to obtain an indictment within a certain time frame, thus violating the separation of powers clause. *Frenzel*, 963 S.W.2d at 915; *Barnes*, 959 S.W.2d at 320; *Condran*, 951 S.W.2d at 191.

We conclude the stated legislative purpose for enacting the 1987 amendments to article 28.061 was not grounded in protecting a constitutional right. *See Jones v. State*, 803 S.W.2d 712, 716 (Tex.Crim.App. 1991) (only if statute violates separation of powers clause, must reviewing court determine if legislative intent was to protect constitutional right or power which might also trump clause). The intent of article 32.01 is to assure an accused of his right to a grand jury indictment, a right protected for more than twenty years by releasing an accused from incarceration or bail without prejudice. *See Barnes*, 959 S.W.2d at 320.

Additionally, the varying lengths of court terms cause grossly different results across the state. Because the courts in Bexar County have two-month terms of court, the State stands to have a prosecution barred in as little as two months and one day. In other courts of this state, the State may have as long as one day short of one year to timely indict an accused. The effect of a statute should be equal for all to whom it applies, whether it is the accused or the State. For these reasons, we hold

---

**5.** In *Meshell,* the court of criminal appeals held the Speedy Trial Act of 1979 and its enforcing mechanism, article 28.061, uncon-stitutionally violated the separation of powers clause. 739 S.W.2d 246, 258 (Tex.Crim.App. 1987).

the 1987 amendments to article 28.061 are unconstitutional.

 Because article 28.061 is unconstitutional, Smith was not entitled to have the prosecution against him dismissed with prejudice. In addition, the Texas Court of Criminal Appeals has recently held that article 32.01 is not applicable once an indictment is returned and that an appellant waives the right to complain of an untimely indictment by waiting an inordinate time to bring a writ of habeas corpus. *Brooks v. State,* 990 S.W.2d 278, 285 (citing *Tatum v. State,* 505 S.W.2d 548 (Tex.Crim.App. 1974)).[6] Because the State indicted Smith before he complained of the untimely indictment and because he waited nine months to complain, the petition for writ of habeas corpus was moot and appellant's complaints were waived. *See Brooks,* 990 S.W.2d 278, 285; *Tatum,* 505 S.W.2d at 550; *Frenzel,* 963 S.W.2d at 916; *Barnes,* 959 S.W.2d at 320; *Condran,* 951 S.W.2d at 191.[7] Accordingly, the trial court did not abuse its discretion by denying Smith's petition for writ of habeas corpus. Smith's fourth point of error is overruled.

The judgment of the trial court is affirmed.

Dissenting Opinion by Justice YAÑEZ.

I concur with the majority opinion as to appellant's first three points of error, but would sustain point of error four. I disagree with the majority's holding that article 28.061 is unconstitutional, and therefore, would hold the trial court erred in denying appellant's pretrial writ of habeas corpus.

The objective of article 32.01 is to release the accused from pre-indictment incarceration or discharge bail if an indictment is not timely issued, and this purpose is not adequately achieved without article 28.061. Standing alone, article 32.01 provides for a temporary release from incarceration or bail. Article 28.061, as amended in 1987, bars further prosecution after an article 32.01 dismissal. The fact that the Legislature chose a firm penalty—dismissal with prejudice—to enforce the constitutional requirement that the State timely indict a defendant, does not render article 28.061 unconstitutional.

In examining a statute for constitutionality, we begin with the presumption that the Legislature did not act unreasonably in enacting the statute and it properly considered any constitutional requirements. *Ex parte Granviel,* 561 S.W.2d 503, 511 (Tex. Crim.App.1978). In other words, we presume the statute is constitutional until the contrary is proven. *Id.*

While the appellate courts are divided on the question of article 28.061's constitutionality, I agree with those courts that have found article 28.061, as amended in 1987, an appropriate enforcement mechanism for untimely indictments. This is particularly true because a prosecutor may avoid permanent dismissal under article 28.061 by invoking the "good cause" provision of article 32.01.

As a practical matter, it is not difficult for the State to show good cause. Once an appellant establishes, in either a habeas corpus proceeding or a hearing on an article 32.01 motion, that an indictment was untimely returned, the burden shifts to the State to establish good cause for delay. *See Ex parte Torres,* 966 S.W.2d 723, 728 (Tex.App.—San Antonio 1998), *vacated,* 993 S.W.2d 662 (Tex.Crim.App. 1999) (not yet published).[1] A prosecutor may estab-

---

6. The court of criminal appeals also recently vacated the opinion in *Ex parte Torres,* 966 S.W.2d 723, 729 (Tex.App.—San Antonio 1998), *vacated,* 1999 WL 410476 (Tex.Crim. App. June 16, 1999), and remanded to the San Antonio Court of Appeals for reconsideration in light of *Brooks.*

7. Effective May 26, 1997, article 15.14 was added to provide for the rearrest of a defendant when a prosecution is dismissed pursuant to article 32.01. TEX.CODE CRIM. PROC. art. 15.14 (Vernon Supp.1999).

1. The court of criminal appeals remanded *Torres* to the court of appeals for reconsidera-

lish good cause by affidavit. *Id.* Courts have found good cause for a variety of reasons, including shortages in police department personnel and prosecutorial policies delaying indictment until lab reports are analyzed. *See id.* (citations omitted). Relatively short terms of court are also a factor that courts may consider in determining whether the State has shown good cause for delaying the indictment. *Ex parte Martin*, 956 S.W.2d 843, 844–45 (Tex.App.—Austin 1997, pet. granted); *Ex parte Mallares*, 953 S.W.2d 759, 763 (Tex. App.—Austin 1997, no pet.). While article 28.061 may affect the prosecutorial function, I would hold the interference is not unreasonable or burdensome. For these reasons, article 28.061 does not unconstitutionally infringe on or violate the principle of separation of powers.

I further disagree with the majority's opinion because it circumvents the separation of powers analysis. In reviewing a statute's constitutionality based on the separation of powers doctrine, a court must answer two questions: (1) whether the statute unduly interferes with the prosecutor's exclusive prosecutorial function of preparing a case for prosecution, and if so, (2) whether the enactment is authorized by a constitutional provision. *Jones v. State*, 803 S.W.2d 712, 716 (Tex. Crim.App.1991); *Meshell v. State*, 739 S.W.2d 246, 255 (Tex.Crim.App.1987).

Assuming for the sake of argument, that article 28.061 unduly interferes with the prosecutorial function, the majority still errs in failing to apply the second step in the separation of powers analysis: determining whether the enactment is authorized by a constitutional provision. I would find article 28.061 authorized by the constitutional provision that empowers the legislature to establish laws regarding the practice and procedures relating to the use

tion in light of *Brooks v. State*, 990 S.W.2d 278, 284–85 (Tex.Crim.App. 1999) (not yet published), discussed later in this opinion. The appellate court's decision still properly explains the procedure for establishing good cause and is relied on for this purpose.

of indictments, including their contents, amendments, sufficiency, and requisites. TEX. CONST. art. V, § 12; *see Ex parte Mallares*, 953 S.W.2d at 763.

Moreover, a criminal defendant also has a constitutional right to an indictment in a felony case. TEX. CONST. art. I, § 10 ("[N]o person shall be held to answer for a criminal offense, unless on an indictment of a grand jury.") Article 28.061 assists in enforcement of this right. The constitution does not allow the State to hold a person under arrest or on bail indefinitely, and prosecutors similarly are not allowed to wait an indefinite period before bringing forth an indictment. Without a strong enforcement mechanism to force the State to seek an indictment—such as the threat of dismissal with prejudice—there is little to ensure prosecutors will comply with the law. Viewing article 28.061 in conjunction with article 32.01, I believe that in amending article 28.061, the Legislature struck an appropriate balance between the doctrine of separation of powers and protecting a criminal defendant's right to indictment.

One of the primary reasons articulated by the *Meshell* court for holding articles 32A.02 and its enforcement mechanism, the former 28.061,[2] unconstitutional, was the provisions gave no consideration to the prosecutor's reason for delay. *See Meshell*, 739 S.W.2d at 256. Unlike the provisions before the *Meshell* court, the provisions before us contain a "good cause" exception, enabling the prosecutor to maintain an untimely indicted case if the delay is justified. Because article 28.061 does not impose an undue interference on the prosecutorial function and is authorized by constitutional provisions, I would hold the statute constitutional.

**2.** Articles 32A.02 and the former article 28.061 were both part of the Speedy Trial of Criminal Cases Act of 1977, 65 th Leg., R.S., ch. 787, 1977 Tex. Gen. Laws 1970, held unconstitutional in *Meshell*, 739 S.W.2d at 252–58.

**696**

Finally, I disagree with the majority's holding that appellant's untimely indictment complaint is moot. Before the 1987 amendments to article 28.061, criminal defendants who had not been timely indicted were merely entitled to a temporary dismissal. Therefore, it is logical that before the 1987 amendments to article 28.061, the court of criminal appeals required defendants to preserve an untimely indictment complaint by raising it prior to indictment. *See Tatum v. State,* 505 S.W.2d 548, 550 (Tex.Crim.App.1974).

Because the 1987 amendments to article 28.061 created a bar to further prosecution, however, the return of an indictment no longer moots the defendant's objection. The appellant in this case, where good cause was never raised, was entitled to a permanent dismissal. The return of an untimely indictment did not moot his complaint. We and other courts have held that, after the 1987 amendment to article 28.061, a complaint of untimely indictment survives the actual return of the indictment and may be raised later as a bar to any further prosecution. *State v. Ybarra,* 942 S.W.2d 35, 38 (Tex.App.—Corpus Christi 1996), *pet. dism'd, improvidently granted,* 977 S.W.2d 594, 594 (Tex.Crim.App.1998); *Norton v. State,* 918 S.W.2d 25, 29 (Tex.App.—Houston [14th Dist.] 1996), *pet. dism'd, improvidently granted,* 969 S.W.2d 3, 3 (Tex.Crim.App.1998).

This reasoning is not affected by the recent court of criminal appeals decision in *Brooks v. State,* 990 S.W.2d 278, 284–85 (Tex.Crim.App. 1999), where the court—without explanation—follows *Tatum*'s holding that article 32.01 has no application once an indictment is returned. In following *Tatum,* decided long before the legislature amended article 28.061 to apply to article 32.01 dismissals, the court of criminal appeals disregards the relevant statutes in effect from 1987 until 1997. The *Brooks* holding also is inconsistent with *Ybarra* and *Norton,* where the court of criminal appeals declined to address this issue and left undisturbed appellate court decisions granting permanent dismissals to similarly situated defendants.

Moreover, it is not clear the State challenged the constitutionality of the statutes in *Brooks.* Unlike the present case, the prosecutor in *Brooks* argued the delayed indictment was justified by good cause. *Brooks,* therefore, should not control our reasoning in the present case. In fact, *Brooks* appears to be an example of how the good cause safety valve may be exercised by the prosecutor so as not to bar a justifiably delayed indictment.

In this case, the State never attempted to show good cause for its delay in indicting the appellant, but rather, relied exclusively on the unconstitutionality of article 28.061. I would hold appellant properly preserved the untimely indictment issue for our review and is entitled to a dismissal with prejudice.