ACCEPTED
06-14-00130-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
2/2/2015 11:28:07 AM
DEBBIE AUTREY
CLERK

**ORAL ARGUMENT WAIVED**

CAUSE NO. 06-14-00130-CR

IN THE

COURT OF APPEALS

SIXTH APPELLATE DISTRICT OF TEXAS AT TEXARKANA

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS

2/3/2015 11:28:07 AM

DEBBIE AUTREY
Clerk

_____

ALVIN PETER HENRY, JR., Appellant

V.

THE STATE OF TEXAS, Appellee

_____

ON APPEAL FROM THE 6TH JUDICIAL DISTRICT COURT
LAMAR COUNTY, TEXAS
TRIAL COURT NO. 25589; HONORABLE BILL HARRIS, JUDGE

_____

# APPELLEE'S (STATE'S) BRIEF

_____

Gary D. Young, County and District Attorney
Lamar County and District Attorney's Office
Lamar County Courthouse
119 North Main
Paris, Texas   75460
(903) 737-2470
(903) 737-2455 (fax)


**ATTORNEYS FOR THE STATE OF TEXAS**

## IDENTITY OF PARTIES AND COUNSEL

Pursuant to Tex. R. App. P. 38.2(a)(1)(A), the list of parties and counsel is not required to supplement or correct the appellant's list.

# TABLE OF CONTENTS

**PAGE:**

IDENTITY OF PARTIES AND COUNSEL . . . . . . . . . . . . . . . . .　i

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . .　ii

INDEX OF AUTHORITIES . . . . . . . . . . . . . . .. . .. . . . . . . . . .　iv

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . .　viii

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . .　x

ISSUE PRESENTED IN REPLY . . . . . . . . . . . . . . . . . . . . . . .　xi

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .　1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . .　2

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . .　10

ARGUMENT AND AUTHORITIES

      **ISSUES PRESENTED IN REPLY NOS. 1 & 2:   THE
      EVIDENCE WAS LEGALLY SUFFICIENT FOR A
      RATIONAL JURY TO FIND BEYOND A REASONABLE
      DOUBT THAT THE APPELLANT, HENRY, WAS
      "ONE AND THE SAME" PERSON LINKED TO
      THE PRIOR CONVICTIONS.** . . . . . . . . . . . . . . . . . . . . .　11

      **ISSUE PRESENTED IN REPLY NO. 3:   THE TRIAL
      COURT DID NOT ABUSE ITS DISCRETION IN
      EXCLUDING THE APPELLANT'S EVIDENCE OF
      HIS "DIMINISHED CAPACITY" DURING THE
      GUILT-INNOCENCE PHASE OF THE TRIAL.** . . . . . .　23

**ISSUE PRESENTED IN REPLY NO. 4:   THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DENYING THE APPELLANT'S REQUESTED JURY INSTRUCTION ON "DIMINISHED CAPACITY."** . . .          28

PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .          30

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . .          30

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . .          31

# INDEX OF AUTHORITIES

**CASES:**                                                              **PAGE:**

*Abdnor v. State*, 871 S.W.2d 726, 731, 732 (Tex. Crim. App. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28,29

*Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Castillo v. State*, 913 S.W.2d 529, 337 (Tex. Crim. App. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Chiles v. State*, 57 S.W.3d 512, 518, 519 n.3 (Tex. App.--Waco 2001, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23,24

*Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim App. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12

*Cooper v. State*, 363 S.W.3d 293, 296 (Tex. App.--Texarkana 2012, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12,15

*Cowles v. State*, 510 S.W.2d 608, 609 (Tex. Crim. App. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Darnes v. State*, 118 S.W.3d 916, 918, 919 (Tex. App.--Amarillo 2003, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25,26,27

*Davis v. State*, 268 S.W.3d 683, 715, 716 (Tex. App.--Fort Worth 2008, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . 13,14

*Ex parte Russell*, 738 S.W.2d 644, 647 (Tex. Crim. App. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Flowers v. State*, 220 S.W.3d 919, 921, 923 (Tex. Crim. App. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12,15,19,20,21,22

**CASES:**                                                   **PAGE:**

*Fuller v. State*, 829 S.W.2d 191, 197 (Tex. Crim. App.
    1992), *overruled on other grounds* . . . . . . . . . . . . . . . . . . .    13,14

*Hart v. State*, 314 S.W.3d 37, 40 n. 1 (Tex. App.--Texarkana
    2010, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    24

*Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.--Texarkana
    2010, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    11

*Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim.
    App. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    11

*Howard v. State*, 896 S.W.2d 401, 406 (Tex. App.--Amarillo
    1995, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    13-14,15

*Human v. State*, 749 S.W.2d 832, 839 (Tex. Crim.
    App. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    15

*Jackson v. State*, 160 S.W.3d 568, 573 (Tex. Crim.
    App. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    24

*Jackson v. State*, 115 S.W.3d 326, 328 (Tex. App.--Dallas
    2003), *aff'd*, 160 S.W.3d 568 (Tex. Crim. App. 2005) . . .  24,25,26,27

*Jackson v. Virginia*, 443 U.S. 307, 318, 319, 99 S.Ct. 2781,
    61 L.Ed.2d 560 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . .    11

*Littles v. State*, 726 S.W.2d 26, 31 (Tex. Crim. App.
    1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    15-16

*Logan v. State*, 482 S.W.2d 229, 232 (Tex. Crim.
    App. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    14

*Lyles v. State*, 850 S.W.2d 497, 502 (Tex. Crim. App.
    1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    23

**CASES:**                                                        **PAGE:**

*Mays v. State*, 223 S.W.3d 651, 653, 654 (Tex. App.--Texarkana
  2007), *rev'd*, 318 S.W.3d 368, 381, 382 (Tex. Crim. App. 2010),
  *cert. denied*, ___ U.S. ___, 131 S. Ct. 1606; 179 L. Ed.
  2d 506 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23,24.28, 29

*Montgomery v. State*, 810 S.W.2d 372, 378-379, 391 (Tex. Crim. App.
  1990) (op. on reh'g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    23.27

*Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App.
  2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    23

*Rhoten v. State*, 299 S.W.3d 349, 355 n. 8 (Tex. App.--Texarkana
  2009, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    24

*Rosales v. State*, 867 S.W.2d 70, 72, 73 (Tex. App.--El Paso
  1993, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    13,14

*Ruffin v. State*, 270 S.W.3d 586, 593, 596 (Tex. Crim.
  App. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    24

*Sakil v. State*, 287 S.W.3d 23, 25-26 (Tex. Crim. App. 2009) . .    28

 *Smith v. State*, 401 S.W.3d 915, 920 (Tex. App.--Texarkana
  2013, pet. ref'd) (Morriss, C.J.) . . . . . . . . . . . . . . 11,12,15,19,20,21, 22

*Smith v. State*, 998 S.W.2d 683, 687, 688 (Tex. App.--Corpus
  Christi 1999, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . .    13, 14

*Wagner v. State*, 687 S.W.2d 303, 311, 312 (Tex. Crim. App.
  1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    24,25,26,27

*Warner v. State*, 944 S.W.2d 812, 815-16 (Tex. App.--
  Austin 1997, pet. dism'd), 969 S.W. 2d 1 (Tex. Crim.
  App. 1998) (per curiam) . . . . . . . . . . . . . . . . . . . . . . . . .    26,27

**CASES:**                                                        **PAGE:**

*Wilson v. State*, 391 S.W.3d 131, 138 (Tex. App.--Texarkana
        2012, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .        28,29

*Wright v. State*, 932 S.W.2d 572, 576 (Tex. App.--Tyler
        1995, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .        13


**STATUTES:**                                                     **PAGE:**

TEX. R. APP. P. 33.1(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .        14,15

TEX. R. APP. P. 38.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

TEX. R. APP. P. 38.2(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . .        i


**TREATISES:**                                                    **PAGE:**

Texas Criminal Pattern Jury Charges, Defenses, 2010,
        Volume 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .        28

## STATEMENT OF THE CASE

This is a criminal appeal from the trial court's final judgment of conviction (CR, pgs. 93-94) for evading arrest or detention with a motor vehicle. *See* Tex. Penal Code Ann. § 38.04(a) (Vernon Supp. 2014).

Following a high-speed chase on December 24, 2013, a grand jury in Lamar County returned an original indictment against Henry for the felony offense of evading arrest or detention with a motor vehicle, which also alleged a deadly weapon. *See* CR, pg. 5. Later, the State filed an amended notice the State filed its first amended notice of intent to seek enhanced sentence as a habitual offender. *See* CR, pgs. 45-46.

After a jury trial, the jury, by its verdict, found Henry guilty of the offense of evading arrest or detention with a motor vehicle, as charged in the indictment. *See* RR, Vol. 4, pg. 60; CR, pg. 75. On the special issue, the jury further found beyond a reasonable doubt that Henry did use or exhibit a deadly weapon, to-wit: a motor vehicle. *See* RR, Vol. 4, pg. 61; CR, pg. 76.

By its verdict, the jury assessed punishment at confinement for sixty (60) years in the Texas Department of Criminal Justice, Institutional Division. *See* RR, Vol. 4, pg. 144; CR, pg. 83. The trial court pronounced sentence (RR, Vol. 4, pgs. 145-146) and signed its judgment of conviction.

*See* CR, pgs. 93-94.  Henry filed notice of appeal.  *See* CR, pg. 92.

## STATEMENT REGARDING ORAL ARGUMENT

The State will waive oral argument. *See* Tex. R. App. P. 38.2.

## ISSUES PRESENTED IN REPLY

**ISSUES PRESENTED IN REPLY NOS. 1 & 2:** THE EVIDENCE WAS LEGALLY SUFFICIENT FOR A RATIONAL JURY TO FIND BEYOND A REASONABLE DOUBT THAT THE APPELLANT, HENRY, WAS "ONE AND THE SAME" PERSON LINKED TO THE PRIOR CONVICTIONS.

**ISSUE PRESENTED IN REPLY NO. 3:** THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN EXCLUDING THE APPELLANT'S EVIDENCE OF HIS "DIMINISHED CAPACITY" DURING THE GUILT-INNOCENCE PHASE OF THE TRIAL.

**ISSUE PRESENTED IN REPLY NO. 4:** THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DENYING THE APPELLANT'S REQUESTED JURY INSTRUCTION ON "DIMINISHED CAPACITY."

CAUSE NO. 06-14-00130-CR

IN THE

COURT OF APPEALS

SIXTH APPELLATE DISTRICT OF TEXAS AT TEXARKANA

_____

ALVIN PETER HENRY, JR., Appellant

V.

THE STATE OF TEXAS, Appellee

_____

ON APPEAL FROM THE 6TH JUDICIAL DISTRICT COURT
LAMAR COUNTY, TEXAS
TRIAL COURT NO. 25589; HONORABLE BILL HARRIS, JUDGE

_____

# APPELLEE'S (STATE'S) BRIEF
_____

TO THE HONORABLE SIXTH COURT OF APPEALS AT
TEXARKANA:

COMES NOW, the State of Texas, by and through the elected County
and District Attorney of Lamar County, Gary D. Young, and the Lamar
County and District Attorney's Office, respectfully submits its Appellee's
(State's) Brief under Rule 38.2 of the Texas Rules of Appellate Procedure.

Unless otherwise indicated, Alvin Peter Henry, Jr. will be referred to

-1-

as "the appellant" or "Henry" and the State of Texas as "the State."

## STATEMENT OF FACTS

### Factual Background:  Christmas Eve, December 24, 2013.

On December 24, 2013 (RR, Vol. 4, pg. 17), Jeremy Massey, a peace officer and sergeant with the Reno Police Department, (Sergeant Massey) was working the day shift on Christmas eve from 8:00 to 5:00.  *See* RR, Vol. 4, pgs. 15, 18, 34.  Sergeant Massey received a call from the Lamar County Sheriff's Department that the Paris Police Department was investigating a shoplifter.  *See* RR, Vol. 4, pgs. 17, 19, 35.  The shoplifter had found the employees and left the scene eastbound on Highway 82 towards Reno in a maroon Ford passenger car.  *See* RR, Vol. 4, pg. 19.  Reno, Texas was in Lamar County.  *See* RR, Vol. 4, pg. 19.

After getting the information from the Paris Police Department, Sergeant Massey left the office on Blackburn Street, turned from Blackburn onto Highway 82 westbound, and immediately saw the car.  *See* RR, Vol. 4, pg. 19.  Sergeant Massey turned around (RR, Vol. 4, pg. 23; State's Exhibit 1), and tried to stop the car; but the car did not stop.  *See* RR, Vol. 4, pg. 20. Pursuit began eastbound towards Clarksville.  *See* RR, Vol. 4, pg. 21. Sergeant Massey was "already going 106" and the vehicle was making no

effort to pull over. *See* RR, Vol. 4, pg. 23. The highest speed reached "around 120, 120-ish." *See* RR, Vol. 4, pg. 21.

At that time, Sergeant Massey was trying to lawfully detain or arrest the driver. *See* RR, Vol. 4, pgs. 24, 33. The pursuit came into downtown Blossom, where the speed limit was 45 and Sergeant Massey was going 40 miles over the limit. *See* RR, Vol. 4, pg. 24. *See also* State's Exhibit 1. The car began driving on the wrong side of the road, and cars were having to get over on the shoulder. *See* RR, Vol. 4, pg. 25.

The pursuit went into Red River County. *See* RR, Vol. 4, pg. 26. In Detroit, the car ran a red light and speed was up to 113 miles an hour. *See* RR, Vol. 4, pg. 26. In Detroit or Clarksville, dispatch advised Sergeant Massey over the radio that Henry was driving the car. *See* RR, Vol. 4, pg. 33.

Earlier, Sergeant Massey had a dispatcher radio ahead for assistance, and a state trooper deployed tire spikes. *See* RR, Vol. 4, pgs. 21-22; State's Exhibit 1. State Trooper Matt Kuhlengel (Trooper Kuhlengel) had "set up the spikes right there on the opposite side of the bridge." *See* RR, Vol. 4, pg. 26; State's Exhibit 1. When Trooper Kuhlengel started pulling the spikes across the road, the car evaded to the other lane to try to avoid his tires being

spiked.  *See* RR, Vol. 4, pg. 27.

The car lost a tire.  *See* RR, Vol. 4, pg. 21.  *See also* RR, Vol. 4, pg. 27 ("Yeah, the tire just came off"); State's Exhibit 1.  But, the car continued at a high rate of speed on a rim.  *See* RR, Vol. 4, pg. 22.  The wheel of the car was cutting into the road because there was no tire.  *See* RR, Vol. 4, pg. 27.

**<u>Arrival of Law Enforcement from Red River County</u>.**

As the pursuit continued through a residential area in Clarksville (RR, Vol. 4, pgs. 27-28), Chief Deputy Quinton Wallace (Chief Deputy Wallace), who worked for the Red River County Sheriff's Office (RR, Vol. 4, pg. 40), was the second car.  *See* RR, Vol. 4, pg. 41.  Chief Deputy Wallace passed Sergeant Massey and pulled in behind the evading car.  *See* RR, Vol. 4, pg. 28.  Chief Deputy Wallace made contact with Henry a/k/a "Petey."  *See* RR, Vol. 4, pg. 41.  Eventually, the car stopped in Clarksville, a distance of about 25 or 30 miles from Reno (RR, Vol. 4, pg. 20), at a residence.  *See* RR, Vol. 4, pg. 28.

Sergeant Massey and Chief Deputy Wallace drew weapons, as they approached the vehicle.  *See* RR, Vol. 4, pgs. 29, 42.  The driver, a large man, was mad and yelling.  *See* RR, Vol. 4, pgs. 29, 37.  However, there was

no physical fighting.  *See* RR, Vol. 4, pg. 37.  Henry's demeanor changed when Chief Deputy Wallace stepped in first.  *See* RR, Vol. 4, pg. 44.

In the car, Sergeant Massey found some steaks from Kroger's and Wal-Mart with no receipt.  *See* RR, Vol. 4, pgs. 30, 31-32; State's Exhibit 2.  Later, Sergeant Massey obtained information that when he had shoplifted and the employees caught him, he threw one of the employees against the wall to get away.  *See* RR, Vol. 4, pg. 38.  Chief Deputy Wallace took Henry to the Red River County Sheriff's Department.  *See* RR, Vol. 4, pg. 43.

### **Grand Jury Indictment, Later Amended by the State.**

On January 21, 2014, a grand jury in Lamar County returned an original indictment that charged Henry with the felony offense of evading arrest/detention with motor vehicle.  *See* CR, pg. 5.  The indictment further alleged a deadly weapon,[1] as follows:

> And it is further presented to said court that a deadly weapon, to-wit:  a motor vehicle, that in the manner of its use or intended use was capable of causing death or serious bodily injury, was used or exhibited during the commission of the felony offense or offenses set out above.

*See* CR, pg. 5.  The District Clerk assigned cause number 25589.

---

[1] At the time of trial, Sergeant Massey testified that a car driven at least 40 miles over the speed limit in Blossom was capable of causing death or serious bodily injury.  *See* RR, Vol. 4, pgs. 24-25.  Chief Deputy Wallace testified in a similar manner.  *See* RR, Vol. 4, pg. 43.

Subsequently, the State filed a motion to amend the indictment (CR, pgs. 47-48), which the trial court granted by a signed order. *See* CR, pg. 54. The amended indictment changed the name of the peace officer from "Steven Hill" to "Jeremy Massey." *See* CR, pg. 55.

On May 14, 2014, Dr. David Bell, a licensed psychologist in the State of Texas, (Dr. Bell) came to talk to Henry at the Lamar County jail. *See* RR, Vol. 4, pgs. 72-73. Dr. Bell spent "probably 30 to 45 minutes." *See* RR, Vol. 4, pg. 87. Dr. Bell believed that Henry was mentally retarded. *See* RR, Vol. 4, pgs. 74, 87. Dr. Bell found Henry to be competent (RR, Vol. 4, pg. 85), and sane. *See* RR, Vol. 4, pg. 86.

**Pre-Trial Proceedings and Jury Trial.**

On June 6, 2014, the State filed its first amended notice of intent to seek enhanced sentence as a habitual offender. *See* CR, pgs. 45-46.

On June 26, 2014, the trial court conducted a hearing "to address the issue of a potential jury instruction and evidence before the jury at guilt/innocence regarding the Defendant's illness--mental illness and mental retardation." *See* RR, Vol. 2, pg. 4.

On June 30, 2014, the trial court presided over the voir dire proceedings. *See* RR, Vol. 3, pg. 5. On the following day, the jury trial

commenced on July 1, 2014. *See* RR, Vol. 4, pg. 6. As witnesses, the State called Sergeant Massey and Chief Deputy; and after their testimony, the State rested. *See* RR, Vol. 4, pg. 44. Through defense counsel, Henry rested. *See* RR, Vol. 4, pg. 48. Both parties then rested and closed. *See* RR, Vol. 4, pg. 48.

The trial court then read its charge to the jury. *See* RR, Vol. 4, pgs. 48-57; CR, pgs. 70-76. Following brief closing arguments (RR, Vol. 4, pgs. 57-58), the jury retired to begin its deliberations (RR, Vol. 4, pg. 58), and later reached a verdict. *See* CR, pg. 77. By its verdict, the jury found Henry guilty of the offense of evading arrest or detention with a motor vehicle, as charged in the indictment. *See* RR, Vol. 4, pg. 60; CR, pg. 75. On the special issue, the jury further found from the evidence beyond a reasonable doubt that Henry did use or exhibit a deadly weapon during the commission of the alleged offense, to-wit, a motor vehicle, that in the manner of its use or intended use was capable of causing serious bodily injury or death. *See* RR, Vol. 4, pg. 61; CR, pg. 76.

**Punishment Phase.**

At the beginning of the punishment phase, the State needed to get a plea on the enhancement paragraphs (RR, Vol. 4, pg. 62), which were

subsequently read and Henry entered his pleas of "not true."  *See* RR, Vol. 4, pgs. 63-64.  The trial court then entered pleas of "not true" on those allegations.  *See* RR, Vol. 4, pg. 64.

After opening statements (RR, Vol. 4, pgs. 64-66), the State offered exhibits 3 through 15 into evidence.  *See* RR, Vol. 4, pgs. 66-67.  The trial court asked for "any objection" and defense counsel stated in open court, "No, sir."  *See* RR, Vol. 4, pg. 67.  The exhibits were admitted.  *See* RR, Vol. 4, pg. 67.  The State published these exhibits to the jury, and rested.  *See* RR, Vol. 4, pgs. 69-70.

After presenting his case during the punishment phase, Henry rested.  *See* RR, Vol. 4, pg. 121.  The State had no rebuttal.  *See* RR, Vol. 4, pg. 121.  Both sides then rested and closed.  *See* RR, Vol. 4, pg. 121.

Following a recess, the trial court read its punishment charge to the jury.  *See* RR, Vol. 4, pgs. 124-134; CR, pgs. 78-86.  After closing arguments (RR, Vol. 4, pgs. 135-140), the jury retired to begin its deliberations.  *See* RR, Vol. 4, pg. 140.  Through defense counsel, Henry indicated he wanted to appeal.  *See* RR, Vol. 4, pg. 141.

Subsequently, the jury reached a verdict.  *See* RR, Vol. 4, pg. 143; CR, pg. 89.  By its verdict, the jury assessed punishment at confinement for

sixty (60) years in the Texas Department of Criminal Justice, Institutional Division. *See* RR, Vol. 4, pg. 144; CR, pg. 83. The trial court then discharged the jury and pronounced sentence. *See* RR, Vol. 4, pgs. 145-146.

On July 1, 2014, the trial court signed a final judgment of conviction by jury. *See* CR, pgs. 93-94. On the same day, Henry signed a handwritten notice of appeal. *See* CR, pg. 92. The trial court also signed its certification of the defendant's right of appeal. *See* CR, pg. 91. On July 15, 2014, the trial court signed an order appointing appellate counsel to represent Henry. *See* CR, pg. 97.

**Proceedings in this Court of Appeals.**

On or about July 15, 2014, Henry filed his notice of appeal in this Court. The District Clerk of Lamar County submitted the Clerk's Record, which this Court filed on or about August 15, 2014. After this Court granted an extension of time, the official court reporter filed the Reporter's Record on or about October 2, 2014. The court reporter filed the exhibits on or about October 6th.

After this Court granted an extension of time, Henry submitted his brief, which this Court received on or about December 5, 2014. On January 5, 2015, the State filed a motion for extension of time to file its brief, which

this Court granted until February 4, 2015.

The State filed, or will be filing, its brief on or before the February 4th extended deadline.

## SUMMARY OF ARGUMENT

Henry's four (4) issues/points of error should be overruled, and the trial court's final judgment of conviction should be affirmed for the following reasons: First and secondly, the State adduced legally-sufficient evidence for the jury, as the rational trier of fact, to find beyond a reasonable doubt that Henry was "one and the same person" in (a) the previous felony convictions used for enhancement and (b) the previous convictions used as extraneous offenses.

Third, the trial court did not abuse its discretion in excluding evidence of Henry's "diminished capacity" during the guilt-innocence stage of his jury trial. There is no "diminished capacity" defense in Texas.

Finally, the trial court did not abuse its discretion in denying Henry's proposed jury instruction (Defendant's Exhibit 3) during the guilt-innocence state of his jury trial because, again, there is no "diminished capacity" defense in Texas. No error was shown, and no harm resulted. Accordingly, the trial court's final judgment of conviction should be affirmed.

# ARGUMENT AND AUTHORITIES

**ISSUES PRESENTED IN REPLY NOS. 1 & 2:** THE EVIDENCE WAS LEGALLY SUFFICIENT FOR A RATIONAL JURY TO FIND BEYOND A REASONABLE DOUBT THAT THE APPELLANT, HENRY, WAS "ONE AND THE SAME" PERSON LINKED TO THE PRIOR CONVICTIONS.

### A. Standard of Review:  Sufficiency of the Evidence.

In evaluating legal sufficiency, this Court reviews all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *See*, *e.g.*, *Smith v. State*, 401 S.W.3d 915, 920 (Tex. App.--Texarkana 2013, pet. ref'd) (Morriss, C.J.) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.--Texarkana 2010, pet. ref'd).  This Court examines legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *See Smith*, 401 S.W.3d at 920 (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *Jackson*, 443 U.S. at 318-19; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim App.

2007)).

B.   **Law:  Proof of Prior Convictions.**

To establish that a defendant has been convicted of a prior offense, the State must prove beyond a reasonable doubt that (1) a prior conviction exists, and (2) the defendant is linked to that conviction.  *See Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007); *Smith*, 401 S.W.3d at 920.  The *Flowers* court noted that Texas law does not require "that the fact of a prior conviction be proven in a specific manner," and "any type of evidence, documentary or testimonial, may suffice."  *See Smith*, 401 S.W.3d at 920 (citing *Flowers*, 220 S.W.3d at 921); *Cooper v. State*, 363 S.W.3d 293, 296 (Tex. App.--Texarkana 2012, pet. ref'd) (no specific form of evidence is required to prove that the prior conviction exists, the defendant is linked to it, and the conviction is final).  In its decision in *Flowers*, the Texas Court of Criminal Appeals likened the process of proving up a prior conviction to evidentiary pieces to a jigsaw puzzle and left the ultimate decision of whether these "pieces fit together sufficiently to complete the puzzle" with the trier of fact under the totality of the evidence.  *See id* (citing *Flowers*, 220 S.W.3d at 923).

Whether the State met its burden of linking the conviction to the

defendant was a matter of conditional relevancy. *See*, *e.g.*, *Davis v. State*, 268 S.W.3d 683, 715 (Tex. App.--Fort Worth 2008, pet. ref'd) (citing *Smith v. State*, 998 S.W.2d 683, 687 (Tex. App.--Corpus Christi 1999, pet. ref'd); *Wright v. State*, 932 S.W.2d 572, 576 (Tex. App.--Tyler 1995, no pet.); *Rosales v. State*, 867 S.W.2d 70, 72 (Tex. App.--El Paso 1993, no pet.)).  "That is, the relevance of a prior conviction is conditioned upon the production of evidence sufficient to show that the defendant[] [is] one and the same." *See Davis*, 268 S.W.3d at 715.

If, after all proof on the fact in question has been received, and the evidence does not, in the aggregate, support a rational finding that the defendant is the same person as the one previously convicted, then the fact-finder should not be allowed to consider the evidence of the conviction. *See Davis*, 268 S.W.3d at 716.  In the case of evidentiary facts, it means that a motion to strike should be granted to withdraw the evidence from consideration. *See id* (citing *Fuller v. State*, 829 S.W.2d 191, 197 (Tex. Crim. App. 1992), *overruled on other grounds*, *Castillo v. State*, 913 S.W.2d 529, 337 (Tex. Crim. App. 1995); *Smith*, 998 S.W.2d at 688)).

If such evidence is lacking but the court nevertheless admits the prior conviction, the defendant must object. *See Howard v. State*, 896

S.W.2d 401, 406 (Tex. App.--Amarillo 1995, pet. ref'd) (citing *Rosales*, 867 S.W.2d at 73 (holding that a motion to strike should be granted thereby withdrawing the evidence from consideration); *Ex parte Russell*, 738 S.W.2d 644, 647 (Tex. Crim. App. 1986) (holding that one who wishes to complain on appeal about the use of prior convictions admitted as evidence during the punishment phase must make a timely objection); *Logan v. State*, 482 S.W.2d 229, 232 (Tex. Crim. App. 1972) (holding that in absence of an objection, any error is waived)).

C.     **Waiver of Error: No Motion to Strike; No Objection.**

1.     **No Motion to Strike.**

Here, when the State offered Henry's prior convictions (exhibits 3 through 15) into evidence, the trial court asked for "any objection" and defense counsel stated in open court, "No, sir." *See* RR, Vol. 4, pg. 67. The trial court admitted the exhibits. *See* RR, Vol. 4, pg. 67. When the State rested (RR, Vol. 4, pg. 70), Henry did not file any motion to strike in order to withdraw the evidentiary exhibits from consideration. *See Fuller*, 829 S.W.2d at 197; *Davis*, 268 S.W.3d at 716; *Smith*, 998 S.W.2d at 688. By failing to file any motion to strike, Henry waived error, if any, and did not preserve his appellate complaint. *See id*; Tex. R. App. P. 33.1(a).

-14-

Therefore, Henry's first and second issues should be overruled.

2. **No Objection.**

Again, when the State offered Henry's prior convictions (exhibits 3 through 15) into evidence, the trial court asked for "any objection" and defense counsel stated in open court, "No, sir." *See* RR, Vol. 4, pg. 67. Under these circumstances, this Court must conclude that any objection was waived. *See Howard*, 896 S.W.2d at 406 (and cited cases); Tex. R. App. P. 33.1(a). For this second reason, Henry's first and second issues should be overruled because he failed to preserve error, if any. *See id*.

D. **Any Type of Evidence, Documentary or Testimonial, May Suffice, and Was Legally-Sufficient in the Present Case.**

Even assuming error preservation, Texas law did not require "that the fact of a prior conviction be proven in a specific manner," and "any type of evidence, documentary or testimonial, may suffice." *See Smith*, 401 S.W.3d at 920 (citing *Flowers*, 220 S.W.3d at 921); *Cooper*, 363 S.W.3d at 296. A sufficient nexus between the defendant and a prior conviction may be shown through circumstantial evidence. *See Human v. State*, 749 S.W.2d 832, 839 (Tex. Crim. App. 1988). One of the *nonexclusive* means of proving identity for purposes of enhancement was by testimony of a witness who identified the accused as the same person previously convicted. *See Littles v. State*,

726 S.W.2d 26, 31 (Tex. Crim. App. 1987) (italics added in the opinion).

As applied here, the appellant, Henry, testified during cross-examination to the following:

> Q. Well, you've been to prison for aggravated assault, haven't you?
>
> A. Yes.
>
> Q. You've been to prison for aggravated robbery, haven't you?
>
> A. Yeah.
>
> Q. You been to prison for theft, right?
>
> A. Right.
>
> Q. You've been to prison for possession of a prohibited weapon, right? Is that that right?
>
> A. I don't know about that.
>
> Q. Been to prison for burglary of a building --
>
> A. (Indicates.)
>
> Q. -- right?
>
> A. Yeah.
>
> Q. Been -- on two different burglary of a buildings. You've been two different times for burglary of a building, right? You've been to prison for aggravated robbery, right?
>
> A. (Indicates.)

*See* RR, Vol. 4, pgs. 109-110.

In addition to the testimony from Henry, Dr. Bell testified during cross-examination to the following:

> Q.    -- right?  But he's been to prison for aggravated assault twice --
>
> A.    Yes.
>
> Q.    -- and for aggravated robbery once, and for three different family violence assaults or four assaults in the -- in the past year or two.  He is a violent person, right?
>
> A.    He has a history of violence, yes.

*See* RR, Vol. 4, pg. 83.  Finally, Dr. Bell testified before the jury that:

> Q.    He don't want to go back to prison?
>
> A.    No.
>
> Q.    All right.  And that's one of the reasons he ran?
>
> A.    Yes.

*See* RR, Vol. 4, pg. 89.

In addition to the testimony from Henry and Dr. Bell, Dewayne Coleman, who owned *Coleman's Barbecue* in Clarksville (RR, Vol. 4, pg. 113), testified during cross-examination to the following:

> Q.    Mr. Coleman, you know that Mr. Henry went to prison in 1989 for aggravated assault, right?

-17-

A.    Right.

Q.    And then he went to prison in 2002 for aggravated robbery, right?

A.    Okay.

Q.    And the first time he went to prison was '78 from what I could find.  That's been 36 years.  Fair to say he's spent more time in prison than out of prison?

A.    Yes.

Q.    The vast majority of his -- of those 36 years he's spent in prison, right?

A.    Right.

*See* RR, Vol. 4, pgs. 119-120.

1.    **Legally-Sufficient Evidence Proved That Henry Was "One and the Same" Person, Who Had Been Convicted in Two (2) Prior Offenses for Enhancement of Punishment.**

In the present case, the State filed its first amended notice of intent to seek enhanced sentence as a habitual offender.  *See* CR, pgs. 45-46.  In that notice, the State identified two (2) prior felony convictions from Red River County, Texas with dates of final adjudication in 1989 and 2002.  *See* CR, pg, 45.  *See also* RR, Vol. 4, pgs. 63-64.

a.    **Prior Felony Conviction for Aggravated Assault in 1989.**

From the testimony of three separate witnesses above, including the

testimony regarding prison from Henry himself, the jury could fairly resolve conflicts in the testimony and weigh that evidence. *See*, *e.g.*, *Smith*, 401 S.W.3d at 920 (and cited cases) (deference given to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."). From the three pieces of testimonial evidence that Henry went to prison in 1989 for aggravated assault (RR, Vol. 4, pgs. 83, 109 and 119) plus the separate piece of evidence in State's Exhibit 9, the jury could have drawn the reasonable inference, *see id*, or fit the pieces together sufficiently, that (1) there was a previous conviction for aggravated assault in 1989, and that (2) Henry was "one and the same person" convicted in 1989 for aggravated assault. *See Flowers*, 220 S.W.3d at 923 [the trier of fact looks at the totality of the evidence admitted to determine 1) whether there was a previous conviction, and 2) whether the defendant was the person convicted.]. *See also Smith*, 401 S.W.3d at 920 (deference given to the responsibility of the jury "to draw reasonable inferences from basic facts to ultimate facts.").

From the totality of the evidence (testimony from three separate witnesses + State's Exhibit 9), the jury could have found these two elements beyond a reasonable doubt. *See Flowers*, 220 S.W.3d at 923. Because these

two elements could be found beyond a reasonable doubt, the various pieces to complete the puzzle were necessarily legally sufficient to prove a prior conviction. *See id.* Thus, Henry's legal-sufficiency challenge should fail as to the 1989 prior felony conviction.

b. **Prior Felony Conviction for Aggravated Robbery in 2002.**

Just as equally, the State adduced three pieces of testimonial evidence that Henry went to prison in 2002 for aggravated robbery (RR, Vol. 4, pgs. 83, 110 and 119) along with the separate piece of evidence in State's Exhibit 10. *Compare* RR, Vol. 4, pgs. 83, 110 and 119 *with* State's Exhibit 10. Again, from this evidence, the jury could have drawn the reasonable inference, or fit the pieces together sufficiently, that (1) there was a previous conviction for aggravated assault in 2002, and that (2) Henry was "one and the same person" convicted in 2002 for aggravated robbery. *See Flowers*, 220 S.W.3d at 923 [the trier of fact looks at the totality of the evidence admitted to determine 1) whether there was a previous conviction, and 2) whether the defendant was the person convicted.]. *See also Smith*, 401 S.W.3d at 920.

From the totality of the evidence (testimony from three separate witnesses + State's Exhibit 10), the jury could have found these two

elements beyond a reasonable doubt. *See Flowers*, 220 S.W.3d at 923. Because these two elements could be found beyond a reasonable doubt, the various pieces to complete the puzzle were necessarily legally sufficient to prove a prior conviction. *See id.* As with the 1989 prior felony conviction, Henry's legal-sufficiency challenge should also fail as to the 2002 prior felony conviction. In conclusion, Henry's first issue/point of error should be overruled.

2. **Legally-Sufficient Evidence Proved That Henry Was "One and the Same" Person, Who Had Been Convicted in Prior Offenses for Extraneous Offenses.**

As with the prior felony convictions in 1989 and 2002, Henry testified that he had been to prison for theft. *See* RR, Vol. 4, pg. 110. When asked by the prosecutor, "You've been to prison for possession of a prohibited weapon, right?," Henry stated, "I don't know about that." *See* RR, Vol. 4, pg. 110. But, the jury could fairly resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts." *See Smith*, 401 S.W.3d at 920. The jury could have disbelieved Henry's testimony as to the extraneous offense of possession of a prohibited weapon, and found to the contrary. *See id.* Finally, Henry testified that "yeah," he's been to prison for burglary of a building and "two different times for

-21-

burglary of a building." *See* RR, Vol. 4, pg. 110.

Dr. Bell testified that Henry has "a history of violence, yes." *See* RR, Vol. 4, pg. 83. Dr. Bell also testified that Henry did not want to go back to prison, and that's one of the reasons he ran. *See* RR, Vol. 4, pg. 89. When asked by the prosecutor, Coleman agreed with an affirmative "yes" that Henry went to prison in '78, and that he's spent more time in prison than out of prison, the vast majority of his 36 years. *See* RR, Vol. 4, pgs. 119-120.

From the totality of the evidence (testimony from three separate witnesses plus the other exhibits excluding State's Exhibits 9 and 10), the jury could have drawn the reasonable inference, or fit the pieces together sufficiently, that (1) Henry had been previously convicted for other extraneous offenses, and that (2) Henry was "one and the same person" convicted in those extraneous offenses. *See Flowers*, 220 S.W.3d at 923; *Smith*, 401 S.W.3d at 920. Thus, Henry's legal-sufficiency challenge should fail as to the other extraneous-offense-convictions, and his second issue/point of error on appeal should be overruled.

**ISSUE PRESENTED IN REPLY NO. 3:** **THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN EXCLUDING THE APPELLANT'S EVIDENCE OF HIS "DIMINISHED CAPACITY" DURING THE GUILT-INNOCENCE PHASE OF THE TRIAL.**

    A.    **Standard of Review:  Abuse of Discretion.**

This Court reviews a trial court's ruling to admit or exclude evidence under an abuse of discretion standard.  *See Mays v. State*, 223 S.W.3d 651, 653 (Tex. App.--Texarkana 2007), *rev'd*, 318 S.W.3d 368 (Tex. Crim. App. 2010), *cert. denied*, ___ U.S. ___, 131 S. Ct. 1606; 179 L. Ed. 2d 506 (2011).  A trial court abuses its discretion if it acts without reference to guiding principles or rules.  *See Chiles v. State*, 57 S.W.3d 512, 518 (Tex. App.--Waco 2001, no pet.) (citing *Lyles v. State*, 850 S.W.2d 497, 502 (Tex. Crim. App. 1993).

If the court's decision falls outside the "zone of reasonable disagreement," it has abused its discretion.  *See Mays*, 223 S.W.3d at 654 (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g)).  As long as the trial court's ruling falls within the zone of reasonable disagreement, this Court will affirm its decision.  *See Mays*, 223 S.W.3d at 654 (citing *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003)).

    B.    **Law:  No "Diminished Capacity" Defense in Texas.**

There is no "diminished capacity" defense in Texas. *See Mays*, 318 S.W.3d at 381 (citing *Ruffin v. State*, 270 S.W.3d 586, 593, 596 (Tex. Crim. App. 2008); *Jackson v. State*, 160 S.W.3d 568, 573 (Tex. Crim. App. 2005)). "Texas does not recognize diminished capacity as an affirmative defense, i.e., a lesser form of the defense of insanity." *See Hart v. State*, 314 S.W.3d 37, 40 n. 1 (Tex. App.--Texarkana 2010, no pet.); *Rhoten v. State*, 299 S.W.3d 349, 355 n. 8 (Tex. App.--Texarkana 2009, no pet.).

The general rule that proof that an accused suffers from a mental weakness or emotional disturbance, short of the inability to distinguish right from wrong, is not admissible at the guilt-innocence stage of trial. *See Jackson v. State*, 115 S.W.3d 326, 328 (Tex. App.--Dallas 2003), *aff'd*, 160 S.W.3d 568 (Tex. Crim. App. 2005); *Chiles*, 57 S.W.3d at 519 n. 3 (citing *Cowles v. State*, 510 S.W.2d 608, 609 (Tex. Crim. App. 1974). In addition to this general rule, the Texas Court of Criminal Appeals held in *Wagner v. State*, 687 S.W.2d 303 (Tex. Crim. App. 1984), as follows:

> Lack of normal impulse control is simply not a circumstance recognized by the Legislature to diminish the criminal responsibility of an accused or reduce his crime to a lesser included offense.
>
> We therefore find that, the issue of appellant's sanity having been taken out of the case, appellant's proffered evidence was

> not material on the issue of his guilt, and its introduction at the guilt phase at trial would only have confused the jury -- the very evil sought to be averted in *Cowles v. State*, supra. The trial court did not err in refusing to admit this evidence and the panel was correct in overruling appellant's contention in this regard on original submission.

*See id*. at 312.

In *Jackson*, the court of appeals held, prior to being affirmed by the Texas Court of Criminal Appeals, that "[t]he *Wagner* court declined to accept appellant's argument that evidence of his mental impairment was admissible at the guilt-innocence phase of trial." *See Jackson*, 115 S.W.3d at 328 (citing *Wagner*, 687 S.W.2d at 311-12). In short, the court held that a defendant's "lack of normal impulse control is simply not a circumstance recognized by the Legislature to diminish the criminal responsibility of an accused or reduce his crime to a lesser included offense." *See Jackson*, 115 S.W.3d at 328 (citing *Wagner*, 687 S.W.2d at 312).

In *Darnes v. State*, 118 S.W.3d 916 (Tex. App.--Amarillo 2003, pet. ref'd), which was decided soon after *Jackson*, the appellant's first two issues involved the exclusion of evidence during the guilt-innocence phase of the trial relating to a mental condition of which he allegedly suffered ("intermittent explosive disorder"). *See id*. at 918. According to the appellant in *Darnes*, the evidence was relevant even though he was not

claiming insanity. *See id.* This was supposedly so in *Darnes* because it negated the *mens rea* averred by the State in the indictment. *See id* (italics added in the opinion).

In *Darnes*, the court of appeals overruled the appellant's argument for three reasons; the first of which reasoned that:

> First, the argument that evidence regarding one's mental condition may be used to negate the *mens rea* involved in a specific intent crime was rejected in *Wagner v. State*, 687 S.W.2d 303 (Tex. Crim. App. 1984). As stated by the Texas Court of Criminal Appeals in that opinion, "the issue of appellant's sanity having been taken out of the case, appellant's proffered evidence was not material on the issue of his guilt, and its introduction at the guilt phase . . . would only have confused the jury . . . ." *Id.* at 312; accord *Warner v. State*, 944 S.W.2d 812, 815-16 (Tex. App.--Austin 1997, pet. dism'd)[2] (also holding the evidence in admissible).

*See Darnes*, 118 S.W.3d at 919.

## C. **Application of Law to the Present Case.**

In applying the *Wagner* rationale here, like in *Darnes* and *Jackson*, any evidence of Henry's mental impairment was not admissible at the guilt-innocence phase of trial. *See Jackson*, 115 S.W.3d at 328 (citing *Wagner*, 687 S.W.2d at 311-12). Here, Henry's lack of normal impulse control was simply not a circumstance recognized by the Legislature to diminish the criminal responsibility of an accused or reduce his crime to a lesser included

---

[2] 969 S.W.2d 1 (Tex. Crim. App. 1998) (per curiam).

offense.  *See Jackson*, 115 S.W.3d at 328 (citing *Wagner*, 687 S.W.2d at 312).

As in *Darnes*, any proffered evidence by Henry was not material on the issue of his guilt, and its introduction at the guilt phase would only have confused the jury.  *See Darnes*, 118 S.W.3d at 919 (citing *Wagner*, 687 S.W.2d at 312; *Warner*, 944 S.W.2d at 815-16).  Here, that was precisely the concern of the trial court in the present case:  "I hear what Mr. Young says about mental illness in guilt / innocence, but I'd have some concerns as to whether that would confuse the jury.  I've got some concerns --[.]"  *See* RR, Vol. 2, pg. 12.

In conclusion, the trial court's June 26th ruling was consistent with the binding case law addressing diminished capacity, and was not an abuse of discretion.  *See Montgomery v. State*, 810 S.W.2d 372, 378-79 (Tex. Crim. App. 1990) (op. on reh'g) (stating that appellate court reviews trial court's decision to admit or exclude evidence for an abuse of discretion).  Therefore, Henry's third issue on appeal should be overruled.

-27-

**ISSUE PRESENTED IN REPLY NO. 4: THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DENYING THE APPELLANT'S REQUESTED JURY INSTRUCTION ON "DIMINISHED CAPACITY."**

A. **Standard of Review:  A Two-Step Process.**

A review of alleged jury charge error involves a two-step process. *See*, *e.g.*, *Wilson v. State*, 391 S.W.3d 131, 138 (Tex. App.--Texarkana 2012, no pet.) (citing *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994; *Sakil v. State*, 287 S.W.3d 23, 25-26 (Tex. Crim. App. 2009)). Initially, this Court should determine whether an error occurred, and then evaluate whether sufficient harm resulted from the error to require reversal. *See Wilson*, 391 S.W.3d at 138 (citing *Abdnor*, 871 S.W.2d at 731-32).

B. **The Appellant, Henry, Was Not Entitled to any Jury Instruction.**

With his final issue, Henry contended that "[s]ince it was error not to allow the testimony at the Guilt/Innocence phase, it was error not to give a requested jury charge on diminished capacity . . ." *See* Appellant's Brief, pgs. 29-30. In his brief, Henry cited to Texas Pattern Criminal Jury Charges, Defense, 201, Chapter 8, Section B 8.4 pp. 113-114. *See* Appellant's Brief, pg. 30. *See also* Defendant's Exhibit 3.

In *Mays*, however, the Texas Court of Criminal Appeals reasoned the

following:

> In sum, the trial judge was not required to admit any expert testimony concerning appellant's mental illness during the guilt stage because it did not directly rebut his culpable *mens rea*.[] Thus, **appellant was not entitled to any jury instruction concerning that evidence.** But having requested such an instruction, appellant has not shown that he suffered any harm when the trial judge gave the jury a legally correct, if unnecessary, instruction concerning the use of that evidence.

*See Mays*, 318 S.W.3d at 382 (footnote omitted) (bold added for emphasis).

In applying the *Mays* rationale above to the present case, this Court should hold that Henry was not entitled to any jury instruction during the guilt-innocence stage of his trial. *See id.* In the present case, Henry was not entitled to his proposed jury instruction in Defendant's Exhibit 3 because the trial judge was not required to admit any testimony (from Dr. Bell or Coleman) concerning appellant's mental illness during the guilt stage because it did not directly rebut his culpable *mens rea*. *See id.*

Because Henry was not entitled to any jury instruction, even as proposed in Defendant's Exhibit 3, no error occurred. *See Wilson*, 391 S.W.3d at 138 (citing *Abdnor*, 871 S.W.2d at 731-32). Because no error occurred, sufficient harm did not result. *See id.* Therefore, Henry's final issue/point of error should be overruled, and the final judgment of conviction should be affirmed.

# PRAYER

WHEREFORE PREMISES CONSIDERED, the State of Texas prays that upon final submission without oral argument, this Court should affirm the trial court's final judgment of conviction, adjudge court costs against the appellant, and for such other and further relief, both at law and in equity, to which it may be justly and legally entitled.

Respectfully submitted,

Gary D. Young
Lamar County & District Attorney
Lamar County Courthouse
119 North Main
Paris, Texas   75460
(903) 737-2470
(903) 737-2455 (fax)

By:_____
    Gary D. Young, County Attorney
    SBN# 00785298

## ATTORNEYS FOR STATE OF TEXAS

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 9.4(i)(3) of the Texas Rules of Appellate Procedure, the "Appellee's (State's) Brief" was a computer-generated document and contained 7492 words--not including the Appendix, if any.  The undersigned attorney certified that he relied on the word count of the computer program,

which was used to prepare this document.

_____
GARY D. YOUNG
gyoung@co.lamar.tx.us

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that in accordance with Tex. R. App. P. 9.5, a true copy of the "Appellee's (State's) Brief" has been served on the 2ND day of February, 2015 upon the following:

> Gary L. Waite
> Attorney at Law
> 104 Lamar Avenue
> Paris, TX   75460

_____
GARY D. YOUNG
gyoung@co.lamar.tx.us